Argued October 3, affirmed November 19, 1973

# STATE OF OREGON, *Respondent, v.* BRIAN MITCHELL CHASE (Nos. 72 4692 and 72 4693), *Appellant.*

515 P2d 1337

*Michael V. Phillips,* Eugene, argued the cause for appellant. With him on the brief were Hammons, Phillips & Jensen, Eugene.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant was indicted① for forgery in the first degree. ORS 165.013. He was convicted of forgery in the second degree. ORS 165.007. He was also indicted② for theft in the first degree, ORS 164.055, and was convicted of theft in the second degree, ORS 164.045. The two cases were consolidated for trial. He appeals, asserting error in the overruling of his demurrer to the theft charge, in the denial of his motion in each case for judgment of acquittal, and in the admission of certain testimony.

The indictments arose out of the following facts: On December 2, 1972, Myrna Wilson's purse was stolen

---

①

"The above named BRIAN MITCHELL CHASE is accused by the Lane County Grand Jury by this Indictment of the crime of FORGERY IN THE FIRST DEGREE committed as follows:

"The said BRIAN MITCHELL CHASE on or about the 3rd day of December, 1972, in the county aforesaid, acting together in pursuance of a common intent with Jerry Donald Stewart, with intent to injure and defraud, did then and there unlawfully and knowingly utter as true and genuine to Cooper Shapley Wise, Jr., of the Emporium, Inc., 2862 Willamette Street, Eugene, Oregon, a forged document evidencing a legal obligation in words and figures as follows:

[copy of credit card charge slip]

the said defendant then and there well knowing said document to be forged; contrary to statute and against the peace and dignity of the State of Oregon."

②

"The above named BRIAN MITCHELL CHASE is accused by the Lane County Grand Jury by this Indictment of the crime of THEFT IN THE FIRST DEGREE committed as follows:

"The said BRIAN MITCHELL CHASE on or about the 3rd day of December, 1972, in the county aforesaid, acting together in pursuance of a common intent with Jerry Donald Stewart, did knowingly and unlawfully commit theft of an Emporium credit card owned by Tom Flory Wilson and of the value of more than $200; contrary to statute and against the peace and dignity of the State of Oregon."

from her shopping cart while she was shopping at the Big M in Springfield. Among the items in her purse was an Emporium Department Store credit card issued in the name of her husband, Tom Wilson. On December 3, 1972, the defendant and a companion, Jerry Stewart, presented this card and two pairs of leather pants to an Emporium store clerk. The defendant signed the credit card invoice with the name of "Jim Wilson." The defendant told the clerk he was Tom's brother. The clerk phoned upstairs to the credit department and, after relating the foregoing, received direct authorization from the credit manager for this purchase and signature other than that of the credit card holder. About five minutes after defendant and Mr. Stewart left the store, the clerk received a call from the credit department advising him they had learned the credit card was in fact stolen.

The clerk had overheard the two men say they were next going to Valley River Shopping Center, and the store manager then gave the clerk permission to go look for them.

That afternoon the clerk saw the defendant and Mr. Stewart in a parking lot at Valley River Shopping Center. He stopped them and told them that he wanted the pants back, that he knew the card they had used was stolen. He said Mr. Stewart asked him if he expected them to take the pants off there in the parking lot, and he said that he did. They went over to the men's car. There were some overalls in the car, and they took the pants off and put the overalls on and gave the pants back to the clerk. The clerk also asked for and received $8 from the defendant for cleaning the pants. Thereafter, a police officer arrived and placed the defendant and Mr. Stewart under arrest.

■ Defendant first challenges as hearsay the admission of the statement made by Stewart to the clerk in the parking lot. Stewart and the defendant were charged in both indictments as having acted together in pursuance of a common intent in the commission of the crimes charged. The testimony establishes that this defendant was but five feet away at the time of the challenged testimony, that he clearly heard Stewart's statement to the clerk, and that Stewart and the defendant immediately walked over to their car, each removed his pants and returned them to the clerk. Neither the defendant nor Stewart was under arrest or otherwise in the custody of the police, and the clerk was not a police officer and had no connection with the police. The testimony was clearly admissible. ORS 41.900 (3), (6); *State v. O'Brien,* 262 Or 30, 496 P2d 191 (1972).

The demurrer to the charge of first degree theft was on the ground it contained the language "of the value of more than $200 which constitutes prejudicial surplusage." Reliance is placed on *State v. Standard,* 232 Or 333, 375 P2d 551 (1962). That case holds that the state is not "permitted to express its views of the law in an indictment." 232 Or at 340.

■■ Here the charge was first degree theft. ORS 164.055.[9] An essential element of that crime, as dis-

---

[9] ORS 164.055 provides:

"(1) A person commits the crime of theft in the first degree if, by other than extortion, he commits theft as defined in ORS 164.015; and

"(a) The total value of the property in a single or aggregate transaction is $200 or more; or

"(b) The theft is committed during a riot, fire, explosion, catastrophe or other emergency in an area affected thereby; or

tinguished from second degree theft, ORS 164.045,[4] is that the property alleged to be the subject of the theft had a value at the time of more than $200. That is initially a question of fact, not of law.[5] Thus, *Standard* is not in point. The state must prove it. Here the trial court correctly concluded at trial that the state did not prove the value of the credit card to be over $200 and withdrew the first degree theft charge from the jury. There was no prejudice. The demurrer was correctly overruled.

The remaining assignments of error challenge the denial as to each charge of defendant's motion for judgment of acquittal.

---

"(c) The theft is theft by receiving committed by buying, selling or lending on the security of the property; or

"(d) The subject of the theft is a firearm or explosive.

"* * * * * *"

[4] ORS 164.045 provides:

"(1) A person commits the crime of theft in the second degree if, by other than extortion, he:

"(a) Commits theft as defined in ORS 164.015; and

"(b) The total value of the property in a single or aggregate transaction is under $200.

"(2) Theft in the second degree is a Class A misdemeanor."

[5] Defendant cites a federal statute, Commerce and Trade, 15 USCA § 1643, which limits the credit card holder's liability for unauthorized use thereof to $50. Even assuming, without deciding, that the value of a credit card under ORS 164.115 is limited to its replacement cost, the alleged value of "more than $200" is not conclusively erroneous for purposes of the demurrer. *See* Clark on Code Pleading, 512, § 80 (hornbook series, 2d ed 1947). Its intrinsic value under this indictment remains a question of fact since the indictment does not charge fraudulent use of the credit card under ORS 165.055, but simply the theft of the card itself. Regular use of the latter statute to prosecute violations involving the use of credit cards will avoid difficulties of the kind encountered here, in State v. Dumont, 3 Or App 189, 471 P2d 847 (1970), and State v. Franke, 13 Or App 278, 508 P2d 454, Sup Ct *review denied* (1973).

■ The motion on the forgery charge was on the ground "there is not evidence from which a jury could find that the item was forged within the meaning of the statute for the reason that it does not purport to be genuine."

We disagree. The defendant falsely represented himself, both orally and in writing by signing the sales slip, ORS 165.002 (1),[1] that he was "Jim Wilson" and the brother of the owner of the credit card, Tom Wilson. This constitutes a violation of ORS 165.002 (4).[2] The sales slip was signed by defendant without authority, with a false name, for the express purpose of defrauding the Emporium of the two pairs of pants. The fraudulent scheme succeeded. It was correctly submitted.

■ The motion in relation to dismissal of the theft charge was "on the ground that there are only two items of evidence. One is * * * possession of recently stolen property, and * * * that alone is not sufficient to go to the jury. The other evidence is exculpatory." Reliance was placed on *State v. Long,* 243 Or 561, 415 P2d 171 (1966). That case holds that mere possession

---

[1] ORS 165.002 (1) states:

"(1) 'Written instrument' means any paper, document, instrument or article containing written or printed matter or the equivalent thereof, whether complete or incomplete, used for the purpose of reciting, embodying, conveying or recording information or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person."

[2] ORS 165.002 (4) states:

"To 'falsely make' a written instrument means to make or draw a complete written instrument in its entirety, or an incomplete written instrument which purports to be an authentic creation of its ostensible maker, but which is not, either because the ostensible maker is fictitious or because, if real, he did not authorize the making or drawing thereof." ·

of stolen goods alone is not sufficient to establish that a defendant "knew or had good reason to believe" that such property was stolen, and thus, that defendant was guilty of "possession of recently stolen property."

Here there was ample evidence in the manner in which defendant used the card, the time factor, and his own statements surrounding his use of it from which a jury could infer that defendant at the time "knew or had good reason to believe" that the card was stolen. ORS 164.095. *See also:* ORS 164.015 (5). We conclude that each motion was correctly overruled.

■ Finally, we note that in *State v. Dumont,* 3 Or App 189, 471 P2d 847 (1970), we held that Oregon credit card statutes under the pre-1971 Criminal Code did not pre-empt our older, more general criminal laws merely because they overlapped them in certain respects, and that a person could, in appropriate circumstances, be prosecuted for forgery rather than for violation of the credit card statute.

In *State v. Franke,* 13 Or App 278, 281, 508 P2d 454, Sup Ct *review denied* (1973), decided after the trial of this case below, we expressly adopted the rule of *Dumont* as applicable to the 1971 Criminal Code. Oregon Laws 1971, ch 743. There we said:

"The change in the forgery and credit card statutes made no actual change in the substantive law. Use of a stolen credit card was previously prohibited by ORS 165.295 (6), and we held in *Dumont* that the existence of that statute did not preclude prosecution for the crime of knowingly uttering and publishing a forged evidence of debt. Use of a stolen credit card is now prohibited by ORS 165.055, and we find no basis on which *Dumont* can be distinguished so as to compel a different result in this case.

"The legislative history of ORS 165.055 evidences no intention that that statute be the only one under which criminal activity involving a credit card should be prosecuted. Neither the minutes of the legislative committee nor the commentary of the Oregon Criminal Law Revision Commission contains any reference to *State v. Dumont,* supra, or any indication that the legislature intended to alter the rule of that case."

Thus, prosecution of the defendant here on charges of theft and forgery rather than fraudulent use of a credit card, ORS 165.055, is not prohibited.[9]

Affirmed.

---

[9] Here the defendant on each charge was sentenced to the county jail "for a period of 90 days, that execution of 70 days of said jail sentence be suspended for a period of one year upon condition that defendant violate no law." The sentences were to be concurrent.

No issue concerning the sentences is here submitted by the defendant based upon State v. Woolard, 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971). Accordingly, we do not consider it. State v. Webber, 14 Or App 352, 513 P2d 496 (1973).