**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Samuel Perry LUCKEY, Jr.,
Defendant-Appellant.**

**No. 80–1805.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1981.

Decided Sept. 4, 1981.

A. J. Kramer, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Henry Wykowski, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before MERRILL, Circuit Judge, MARKEY,* Customs and Patent Appeals Judge, and FARRIS, Circuit Judge.

MERRILL, Circuit Judge:

Appellant has been convicted of the felony of bank larceny in violation of Title 18 U.S.C. § 2113(b).[1] The stolen property was a blank dividend check taken from the bank's corporate trust department.[2] The blank check, after having been taken from the bank, was filled in for the sum of $367.80, payable to appellant, together with a purported record date, payable date and dividend rate per share. The corporation "signature" was by rubber stamp. The stolen check was not an actual dividend check. It was what is termed a "leader" or sample, used at the beginning of each new printing run, and is distinguished from actual dividend checks by small holes punched through one or more blanks on the face of the check. Bank officials testified that the stolen check could never have been cashed at the bank from which it was stolen (or, perhaps, at any bank), since it could be identified as a leader and the stamped signature would have been recognized as a forgery. Nevertheless, appellant successfully cashed the check for its full face amount at a store where he was known.

At trial, appellant's defense was that the stolen check at the time it was stolen did not have a value in excess of $100. Appellant's motion for directed verdict on this ground was denied by the district court. It instructed the jury:

"* * * you must decide whether the Government has proved beyond a reasonable doubt that the checks in question in each count had a value of at least $100. The value must be established as of the time of the taking, but, to determine that value, the jury may also take into account evidence of what happened afterwards."

The jury found appellant guilty. This appeal was taken, and the sole question presented is whether there was sufficient proof of value from which the jury could have found beyond reasonable doubt that, at the time of the theft, the blank check had a value in excess of $100.

The government argues that where there is no preprinted amount on a check, the amount actually received by the thief determines the value of the stolen check at the time of taking. However, cases on which the government relies for this proposition deal with prosecutions for receiving or possessing stolen property, where the value of the property at the time of theft was not critical. *See, e. g., United States v. Evans*, 446 F.2d 998 (8th Cir. 1971), *cert. denied*, 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 670 (1972); *United States v. Kramer*, 289 F.2d 909 (2d Cir. 1961). This is an important difference. *United States v. Tyler*, 466 F.2d 920, 925 (9th Cir.) (Duniway, J., concurring and dissenting), *cert. denied*, 409

---

* Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. 18 U.S.C. § 2113 provides, in pertinent part, that:

    "(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 * * * [from] any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

    Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 * * * shall be fined not more than $1,000 or imprisoned not more than one year, or both."

2. Appellant was indicted on fourteen counts of larceny, each for theft of a dividend check in an amount over $100. The jury found him guilty on all fourteen counts. The district court then granted appellant's motion for acquittal on counts 2 through 14, since the government had not established that each theft was a separate occurrence.

U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972).

In a prosecution for possession or concealment of stolen property, it would be sufficient proof if the stolen property could be shown to have had the requisite value at any time during the period of possession or concealment. In that case it would be sufficient if the evidence showed, as here, that the defendant possessed the blank paper after it had been placed in a form which made it negotiable for more than $100. *See United States v. Kramer, supra,* 289 F.2d at 921. But when the offense charged is the theft of property of a certain value, evidence must show the value of the property at the time of theft.

There is no evidence at all upon this question. The only proof of value is the fact that when blanks were filled in and the check was cashed, a sum in excess of $100 was realized. This may well be evidence of the value of the check at the time it was cashed. At that time, by virtue of acts of defendant in enhancement of value, it could be argued that the check was worth what was received for it.

That value, however, is attributable in large part to the acts of enhancement performed by appellant after he stole the check. Three wrongful acts—theft, forgery, and negotiation of the forged check—combined to make the check "worth" the amount it was cashed for. Since appellant (who could have been charged with all three acts) was only charged with one of these crimes, it was the government's burden to prove the value of the check absent forgery and negotiation.

There was no evidence introduced as to what the unenhanced blank check would have been worth on the "thieves' market," where the potential for enhancement would have value to one capable of doing the enhancing. *See, e. g., Churder v. United States,* 387 F.2d 825, 832–33 (8th Cir. 1968). Put another way, the question is what someone would be willing to pay to gain possession of the stolen blank dividend check. The skill, risk and difficulty that the theft entailed would seem to be relevant. Without expert testimony on these matters, it is pure speculation to attribute value in any specific amount to that which was stolen or to the potential for its enhancement. Certainly, a determination as to such values on the thieves' market can hardly be said to fall within the realm of experience of the average juror, so that beyond reasonable doubt an unenhanced blank check could be found to have a value in excess of $100.

We conclude that there is no evidence to support the jury verdict of guilty of felony larceny, and that conviction of that offense must be reversed.

The indictment specifies that the offenses were "in violation of Title 18 U.S.C. § 2113(b)," which section defines both the felony and misdemeanor offenses. *See* 18 U.S.C. § 1. The verdict of guilty thus encompasses both the felony and the misdemeanor. There is no question that the evidence is sufficient to show that appellant was guilty of the theft of the blank checks and thus was guilty of a misdemeanor. In *United States v. Lacario,* 431 F.2d 1182, 1184 (9th Cir. 1970), we held that in such a case "the cause [should be] remanded so that the district judge may * * * sentence the appellant for his misdemeanor." In our judgment the same course should be followed here.

In sentencing, appellant was treated as a youth offender under the Federal Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* He was committed to the custody of the Attorney General under § 5010(b) for treatment and supervision until discharged by the Parole Commission. 18 U.S.C. § 5017(c) provides that where so sentenced the youth offender shall be conditionally discharged on or before four years from date of conviction, and shall be unconditionally discharged on or before six years from that date.

However, 18 U.S.C. § 3401(g) provides that where the sentence is imposed by a magistrate for conviction of a misdemeanor, a youth offender cannot be sentenced to

custody of the Attorney General for a period of longer than one year. This court, in *United States v. Amidon*, 627 F.2d 1023, 1027 (9th Cir. 1980), has held that the same limitations on sentences apply where the sentence is imposed by a district judge.

The judgment of conviction, in so far as it relates to a felony, is reversed. In so far as it relates to a misdemeanor, it is affirmed.

The order committing appellant to the custody of the Attorney General is vacated, and the case is remanded for resentencing.