STATE of North Dakota, Plaintiff and Appellant,

v.

Daniel J. McCABE, Defendant and Appellee.

Cr. No. 787.

Supreme Court of North Dakota.

Feb. 11, 1982.

Gail Hagerty, Asst. State's Atty., Bismarck, for plaintiff and appellant.

Pulkrabek & Tuntland, Mandan, for defendant and appellee; argued by Thomas M. Tuntland, Mandan.

PAULSON, Justice.

This is an appeal from an order suppressing evidence dated July 7, 1981, of the Burleigh County Court of Increased Jurisdiction. We reverse.

Daniel J. McCabe, Jayta Christopher, and a Mr. Rainwater on June 19, 1981, had dinner at the Holiday Inn restaurant in Bismarck, North Dakota. The hostess, Jean Dunn, observed McCabe and his two companions and noted that they were talking loudly and using obscene language. Ms. Dunn was working as the cashier when McCabe presented a Mastercharge credit card issued to Kenneth Eby in payment of the bill for the three dinners, which totaled $42.87.

McCabe also purchased an atlas for the sum of $6.12 from another cashier at the Holiday Inn, Arnold Maier, and again used Eby's Mastercharge credit card as payment. McCabe's behavior caused Ms. Dunn to become suspicious and she checked with Mastercharge in order to determine whether or not the card was valid. Mastercharge informed her that the card had been reported as stolen.

Ms. Dunn then contacted the police, and upon their arrival at the Holiday Inn, both she and Arnold Maier provided a description of the individual who had used the credit card. The description was as follows: a male with black, curly shoulder-length hair, five feet and eight or nine inches in height, weighing 130 or 140 pounds, wearing blue jeans and a black T-shirt with the astrological sign or letters "Virgo". He was further described as having a mustache, a couple of days' growth of beard, and a tattoo "Damien" on his left hand or arm.

Another individual at the Holiday Inn, Peter Kremer, gave the officers an address where the suspect could be found. The officers immediately drove to the address and learned that the apartment was rented by a young woman. They entered the apartment building by the rear door, and walked down the stairs to the basement apartment and knocked on the door. Jayta Christopher answered the door. Officer Nass asked for her name, which she furnished. He then asked her whether or not she was alone. Her reply was in the negative. Officer Nass then requested identification. Ms. Christopher turned around and walked back further into the apartment, leaving the door to the apartment partially open. Officer Nass followed her for several steps into the apartment and observed McCabe sitting on the living room couch. Because McCabe fit the description of the person who had used the stolen credit card at the Holiday Inn, Officer Nass asked him for identification. McCabe presented a Texas driver's license permit. McCabe was then placed under arrest and taken to the police station.

After McCabe was arrested, Officer Nass learned that a blue Chevrolet Monza, which McCabe and Christopher had been using, was registered to Kenneth Eby. The officers impounded the vehicle and inventoried its contents, and discovered a Sears credit card receipt which showed a purchase of $51.63 charged to Kenneth Eby. The officers later learned that Kenneth Eby's Sears credit card had also been reported as stolen.

Following his arrest, McCabe was photographed at the police station. Shortly thereafter, Jean Dunn was shown six photographs, including McCabe's, which depicted men who generally fitted the description provided by Ms. Dunn. Ms. Dunn immediately identified McCabe's photograph as the man who had used Kenneth Eby's Mastercharge credit card at the Holiday Inn. None of these photographs were shown to Arnold Maier, the other Holiday Inn employee who had provided police with a description.

On June 22, 1981, a complaint was issued charging McCabe with forgery, a class A misdemeanor. On June 29, 1981, McCabe filed a motion to suppress, a demand for speedy trial, and a waiver of jury trial.

McCabe asserted that his warrantless arrest for a misdemeanor not committed in the presence of the officer violated the Fourth and Fourteenth Amendments to the United States Constitution and violated Section 29–06–15 of the North Dakota Century Code. McCabe also asserted that his warrantless arrest in a dwelling violated the Fourth and Fourteenth Amendments.

After a hearing on the motion to suppress on July 6, 1981, the county judge issued his opinion suppressing the evidence. On July 7, 1981, the judge issued an order which provided in pertinent part:

"IT IS HEREBY ORDERED in accordance with this court's memorandum opinion of July 6, 1981 that the following evidence is suppressed and the state is prohibited from introducing said evidence at trial of the above entitled action:

1. All evidence concerning the photographic identification of the defendant;

2. Any in-court identification of the defendant;

3. Any evidence secured as a direct result of the photographic identification of the defendant."

The State appeals from that portion of the order which suppressed any in-court identification of the defendant.

Two issues have been raised on appeal:

1. Was McCabe's arrest invalid?

2. Did the court err in prohibiting any in-court identification of McCabe?

I.

The first issue is whether or not McCabe's arrest was invalid.

McCabe first contends that his arrest was invalid because he was arrested without a warrant for a misdemeanor which was not committed in the officer's presence. Accordingly, McCabe contends that the arrest violated his constitutional rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and violated Section 29–06–15, N.D.C.C.

At the time of the arrest and the filing of the complaint in this case, Section 29–06–15(4), N.D.C.C., provided:

"29–06–15.  Arrest without warrant.—A peace officer, without a warrant, may arrest a person:

\*     \*     \*     \*     \*     \*

4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

In *State v. Willms*, 117 N.W.2d 84 (N.D. 1962), this court was presented with a factual situation similar to the instant case:

"The record discloses that, after accepting defendant's check and delivering to him the watch and cash in exchange for it, the clerk who had accepted the check became suspicious and talked to his employer.  The bank on which the check was drawn was called, and it was discovered that the defendant had no account with such bank.  Thereupon the police were notified and the defendant was located and taken into custody, after which the State's Attorney signed a criminal complaint upon which a criminal warrant was issued."

*State v. Willms, supra,* 117 N.W.2d at 87. The court concluded that the term "charge" in Section 29–06–15(4) includes an oral charge or accusation made to a peace officer:

"This court has held that the term 'charge,' within the statute authorizing an arrest without a warrant on a charge, made on reasonable cause, of the commission of a felony, does not mean 'a formal written charge,' but includes an oral charge or accusation made to a peace officer.  [Citation omitted].

"Therefore, the arrest on the oral charge of the owner of the place of business which had accepted a check drawn on a bank in which the defendant had no account, was proper since such arrest was made on a charge, based upon reasonable cause, of the commission of a felony by the defendant."

*Id.*

■■ The State contends that the theft involved in this case was of property in excess of $100, and was therefore a class C felony under the theft-grading statute in

force at the time of the arrest in this case.[1] At the time the officers arrested McCabe they had probable cause to believe that the credit card was stolen and that Kenneth Eby's signature had been forged on two charge slips in the amount of $48.99. In order to arrest a suspect without a warrant for an offense not committed in his presence, the officer must have reasonable cause to believe that a felony has been committed and that the defendant has committed it. *State v. Klevgaard*, 306 N.W.2d 185, 190 (N.D.1981). McCabe asserts that the officers only had reasonable cause to believe that a misdemeanor had been committed, because at the time of the arrest they knew only that McCabe had forged Kenneth Eby's signature on two charge slips in the amount of $48.99. However, the officers also had reasonable cause to believe that McCabe was in possession of Eby's Mastercharge credit card, in violation of Section 12.1–23–02(3), N.D.C.C. Possession of stolen property is classified as theft under this state's consolidation of theft offenses, Chapter 12.1–23, N.D.C.C., and thus possession of stolen property valued in excess of $100 was, at the time of the arrest in this case, a class C felony.

We conclude that the officers had probable cause to believe that a felony had been committed and that McCabe had committed it. The arresting officer, Officer Nass, testified at the suppression hearing that he believed he had probable cause to arrest McCabe because McCabe possessed a stolen credit card, which Nass opined had a value of over $100.

It is well settled that the value of property which is stolen is a question of fact. *See, e.g., Churder v. United States*, 387 F.2d 825, 833 (8th Cir. 1968); *State v. Chase*, 15 Or.App. 369, 515 P.2d 1337, 1340 (1973). Courts in other jurisdictions have recognized that stolen credit cards have an intrinsic value beyond their plastic content and the cost of printing them. *Miller v. People*, 193 Colo. 415, 566 P.2d 1059, 1061 (1977); *State v. Chase, supra*, 515 P.2d at 1340 n. 5. The United States Court of Appeals for the Ninth Circuit recently reached a similar conclusion regarding stolen blank checks. *United States v. Luckey*, 655 F.2d 203, 205 (9th Cir. 1981). In cases involving the theft of such items, courts have indicated that evidence of "street value" or "thieves' market" value is admissible to determine the value of the stolen credit cards or blank checks. *United States v. Luckey, supra*, 655 F.2d at 205; *Churder v. United States, supra*, 387 F.2d at 832–33; *Miller v. People, supra*, 566 P.2d at 1060. We conclude that, under the circumstances in this particular case, it was reasonable for Officer Nass to believe that Kenneth Eby's stolen Mastercharge credit card had a "street value" or "thieves' market" value in excess of $100.[2] He therefore had probable cause to believe that McCabe had committed a felony.

McCabe also contends that his arrest was invalid because he was arrested without a warrant while he was in a dwelling, in violation of his Fourth Amendment rights.[3]

1. The theft-grading statute, Section 12.1–23–05, N.D.C.C., was amended effective July 1, 1981.

2. Although we conclude that it was reasonable for the officer to believe that the stolen credit card was worth more than $100, we find it unnecessary to decide what the precise value of a stolen credit card is. As previously noted, this is a question of fact, and will require proof at trial. However, because McCabe has not been charged with theft of the credit card, the precise value of the stolen Mastercharge card is not at issue here.

3. The warrantless entry into Jayta Christopher's apartment by Officer Nass which resulted in the arrest of McCabe raises several Fourth Amendment issues. In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court held that the Fourth Amendment prohibits police from making a warrantless, nonconsensual entry into a suspect's home in order to make a routine felony arrest. We note that in the instant case the entry was into the home of a third party, not the home of the defendant, and there is some question whether or not the entry was with consent. The United States Supreme Court specifically noted in *Payton* that it was not deciding these issues:

"Before addressing the narrow question presented by these appeals, we put to one side other related problems that are not presented today. . . .

We find it unnecessary to reach this issue, however, because we conclude that, even if McCabe's arrest were invalid, the court erred in suppressing any in-court identification of McCabe by Jean Dunn and Arnold Maier. We will therefore assume *arguendo* that McCabe's arrest was invalid for the purpose of discussing the remaining issue, the suppression of in-court identification of McCabe.

## II.

The final issue raised is whether or not the court erred in suppressing any in-court identification of the defendant at trial by Jean Dunn and Arnold Maier. This Court has held, in *City of Wahpeton v. Johnson*, 303 N.W.2d 565, 567 (N.D.1981), that where an arrest is unlawful, a defendant may bring a motion to suppress evidence which results from the invalid arrest. However, in *State v. Phelps*, 297 N.W.2d 769, 774 (N.D.1980), we held that evidence need not be excluded as fruit of the poisonous tree when knowledge of the evidence can be attributed to an independent source.

■ We have previously held that where the witness has had an opportunity to closely observe the defendant during the commission of the offense, has given a description to the police which fits the defendant, and has identified the defendant shortly after the crime, this may be sufficient to show that the witness's in-court identification of the defendant was not based on a

pre-trial viewing of the defendant, but had an independent basis. *State v. Lewis*, 300 N.W.2d 210, 212 (N.D.1980); *State v. McKay*, 234 N.W.2d 853, 858 (N.D.1975). In the instant case, Jean Dunn closely observed the defendant and his two companions as they ate, and noted that they drew attention to themselves with their loud and obscene language. She testified that she was suspicious of the defendant and paid close attention to him. She provided a detailed description of the defendant when interviewed by the police. Within a few hours after the offense, Ms. Dunn was shown a photographic array and immediately selected the defendant's photo. In light of these facts, we conclude that Ms. Dunn's ability to identify the defendant in the courtroom is not a result of his allegedly unlawful arrest, but had an independent basis. We therefore conclude that the court erred in suppressing any in-court identification of the defendant by Jean Dunn.

■ We also conclude that the court erred in suppressing any in-court identification of the defendant by Arnold Maier, the other Holiday Inn employee who was able to identify the defendant. There is nothing in the record which indicates that Maier ever viewed a photographic array or viewed McCabe in person at any time after the arrest. Maier's ability to identify McCabe as the man who used Kenneth Eby's Mastercharge credit card at the Holiday Inn could be based entirely upon his observance of McCabe at that time, and would in no way result from the allegedly illegal arrest.

Nor do these cases raise any question concerning the authority of the police, without either a search or arrest warrant, to enter a third party's home to arrest a suspect. The police broke into Payton's apartment intending to arrest Payton and they arrested Riddick in his own dwelling. We also note that in neither case is it argued that the police lacked probable cause to believe that the suspect was at home when they entered. Finally, in both cases we are dealing with entries into homes made without the consent of any occupant. In *Payton*, the police used crowbars to break down the door and in *Riddick*, although his three-year-old son answered the door, the police entered before Riddick had an opportunity either to object or to consent."
Payton v. New York, 445 U.S. 573, 582–83, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639.

Another issue raised by McCabe's challenge of his arrest on Fourth Amendment grounds is standing. In *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), the Court held that a defendant has standing to invoke the exclusionary rule only when his own legitimate expectation of privacy, rather than that of a third person, has been invaded by unlawful police conduct. Resolution of this issue in the instant case would thus turn on a determination of whether or not McCabe had a legitimate expectation of privacy in Jayta Christopher's apartment.
We find it unnecessary to enter these murky waters, inasmuch as we reach the conclusion that, even if McCabe's arrest were found to be invalid, the court erred in suppressing the in-court identification of McCabe by Jean Dunn and Arnold Maier.

The Supreme Court of the United States, in *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), a case similar to the one at bar, further eroded the exclusionary rule in holding that the in-court identification of the defendant need not always be suppressed as the fruit of the poisonous tree where there is an unlawful arrest, but is admissible when the knowledge of the police of the defendant's identity and the witness's independent recollection of him both antedate the unlawful arrest. In *Crews, supra*, the Supreme Court was faced with an appeal from an order suppressing the in-court identification of a defendant because the defendant had been photographed following an arrest without proper cause, and a photo line-up had been shown to the victim, who was able to select the defendant's photograph.

The Supreme Court stated in *Crews, supra*, 445 U.S. at 471, 100 S.Ct. at 1250:

"A victim's in-court identification of the accused has three distinct elements. First, the victim is present at trial to testify as to what transpired between her and the offender, and to identify the defendant as the culprit. Second, the victim possesses knowledge of and the ability to reconstruct the prior criminal occurrence and to identify the defendant from her observations of him at the time of the crime. And third, the defendant is also physically present in the courtroom, so that the victim can observe him and compare his appearance to that of the offender. In the present case, it is our conclusion that none of these three elements 'has been come at by exploitation' of the violation of the defendant's Fourth Amendment rights." [Citation omitted].

The above rationale of the Court in *United States v. Crews* applies in this case.

■ In the instant case, the three criteria enunciated in *United States v. Crews, supra*, have been established and, accordingly, there will not be a violation of McCabe's constitutional rights if an in-court identification of McCabe is admitted into evidence. Therefore, an in-court identification of McCabe by Ms. Dunn and Arnold Maier

should be permitted and admissible in evidence. *See Wong-Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

■ The line of demarcation as determined by *United States v. Crews, supra*, is that the exclusionary rule enjoins the State from benefiting from evidence that it has unlawfully obtained; it does not reach backward to taint the information that was in the hands of the police prior to any illegal activity on their part.

A review of the record reveals that Ms. Dunn's testimony at the suppression hearing was based upon her observation of the defendant while he and his two companions were dining at the Holiday Inn, and she was able to give the police an excellent identification of the defendant, not only as to his physical stature, but as to the clothing which he was wearing at the time. Such testimony was based on an independent recollection of the identity of the defendant prior to the police officer showing her the six photographs.

We conclude that the ability of Jean Dunn and Arnold Maier to identify McCabe at trial will be based upon an independent recollection and will not be the result of the allegedly invalid arrest. We therefore reverse the order of the court which prohibits any in-court identification of the defendant by Maier or Ms. Dunn.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.