39 F.3d 1189
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Andrew JOHN, Defendant-Appellant.
 No. 93-30221.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1994.
Decided Oct. 6, 1994.
 
 Before: ALARCON, NORRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Following a jury trial, Thomas Andrew John was convicted of theft of Government property valued in excess of one hundred dollars in violation of 18 U.S.C. Sec. 641, and making a false statement in violation of 18 U.S.C. Sec. 1001. The dispositive issue on appeal is whether the Government proved that the value of the Government property John took without authorization exceeded one hundred dollars. John also argues that this matter must be remanded for a new trial because the district court erred in giving a coercive Allen instruction to the jury following a deadlock during its deliberations. John does not challenge the sufficiency of the evidence regarding his conviction for a violation of section 1001. We hold that the Government failed to prove that the value of the stolen Government property exceeded one hundred dollars. We also conclude that the district court did not commit error in instructing the jury during its deliberations. We remand for resentencing for the violation of section 1001.
 
 I.
 
 3
 In his opening and reply briefs before this court, John challenged the sufficiency of the evidence regarding his conviction of a violation of section 641 on the ground that no rational jury could have found the essential element of intent beyond a reasonable doubt. John did not assert, however, that the judgment of conviction for a violation of a section 641 must be reversed because the Government had failed to prove that the value of the stolen property exceeded one hundred dollars. Rather, John argued that the district court had improperly calculated his offense level under the Sentencing Guidelines.
 
 
 4
 After submission of the briefs, John advised this court that this court's decision in United States v. Seaman, 18 F.3d 649 (9th Cir.1994), required reversal of his felony theft conviction because the Government had failed to prove that the value of the Government property stolen by John exceeded one hundred dollars. In Seaman, we reversed a conviction pursuant to 18 U.S.C. Sec. 641 because the Government failed to prove that the value of the timber at the time of the theft exceeded one hundred dollars. Id. at 650-51.
 
 
 5
 We ordered supplemental briefing on the applicability of Seaman to the instant case. The parties agree that the sufficiency of the evidence of value to sustain the conviction was not raised in John's opening and closing briefs. The Government asserts that John waived the question of the sufficiency of the evidence of value to support his conviction because it was not expressly raised in the briefs he filed with this court. In United States v. Ullah, 976 F.2d 509 (9th Cir.1992), we held that we will consider an issue not raised on appeal if the failure to do so would result in manifest injustice. Id. at 514 (citation omitted). We agree with John that application of the waiver rule in this case would result in manifest injustice. See United States v. Durcan, 539 F.2d 29, 31-32 (9th Cir.1976) (this court considered sufficiency of evidence argument not raised in district court and reversed because the prosecution had not proved an essential element of the offense).
 
 II.
 
 6
 John's conviction for theft is based on evidence that he removed, without authorization, 1300 pounds of yew bark from trees located in the Tiller Ranger District of the Umpqua National Forest in Oregon. John agreed to pay 7.5 cents a pound to the United States Forest Service (Forest Service). It was the Government's theory at trial that John stole 1300 pounds of yew bark whose value exceeded more than one hundred dollars when valued at the price John recovered from the collectors. John now argues that the value of the property allegedly taken is measured at the time of the theft. The theft of Government property valued at more than hundred dollars is a felony because it is punishable by a prison term exceeding one year. 18 U.S.C. Secs. 1, 641. John contends that the value of the 1300 pounds of yew bark at 7.5 cents a pound is $97.50, which is insufficient evidence to support a felony conviction under section 641.
 
 
 7
 A conviction must be upheld if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 III.
 
 8
 We have repeatedly held that "[w]hen the offense charged is the theft of property of a certain value, evidence must show the value of the property at the time of the theft." United States v. Paulino, 717 F.2d 1276 (9th Cir.1983) (quoting United States v. Luckey, 655 F.2d 203, 205 (9th Cir.1981)). In Luckey, we distinguished between prosecutions for possession or concealment of stolen property, where value may be established at any time during the period of possession or concealment, and "theft of property of a certain value, [where] evidence must show the value of the property at the time of the theft." 655 F.2d at 205. We held that felony bank larceny in violation of 18 U.S.C. Sec. 2113(b) had not been established, because there was no evidence of value at the time a blank dividend check was stolen from the bank's corporate trust department. Id.
 
 
 9
 Although Seaman does not cite Luckey, it nevertheless applies the established rule that value in a theft case is determined at the time of the taking. Seaman 18 F.3d at 651. In Seaman, the only evidence offered by the Government as to the value of stolen timber was that Seaman advertised to sell firewood at $500 for four cords, $600 for five cords and $1,100 for eleven cords. Id. On appeal, the Government argued that these values should be used to determine the value of the timber removed from federal land. Id. at 651. The appellants contended that what they removed from the land was felled trees and what they offered to sell was seasoned firewood that had been chopped, packaged, and transported to a convenient place for marketing. Id. In response, the Government asserted that the statute contemplates using as a measure of value the retail or wholesale cost of the federal property, and the price defendants advertised represented the retail value. We rejected this argument, reasoning that
 
 
 10
 it assumes that the property offered for sale is the same as the property taken from the federal land.... If we entertained any remaining doubt on the issue, it would be resolved by the unanswered testimony of defendant-appellant Seaman that the government itself, when it authorized persons to enter federal land and cut the trees, charged only $5 a cord. The product the government offered for sale at that price more closely resembles the product defendants removed from the government land than the cured firewood. At $5 a cord, the total value of the nine cords of wood cut from federal property would be no more than $45.
 
 
 11
 Id. We concluded in Seaman that the property did not have a value in excess of one hundred dollars. Id.
 
 
 12
 Under the Luckey test, the record in the instant case does not support a valuation in excess of one hundred dollars. As discussed above, the value of the 1300 pounds of yew bark at the time of taking was $97.50. The face value or market value of the yew bark at the time of taking can readily be determined by the price fixed by the Forest Service at the time of taking. Thus, this record does not support the application of the "thieves market" or benefit to the thief method of valuation, as suggested by the Government. E.g., United States v. Bigelow, 728 F.2d 412, 413-14 (9th Cir.1983) ("In the absence of face or par value, property value is determined by market forces which establish the price at which a buyer is willing to offer the property," but where no commercial market exists, "the property's value in an illegal market may be considered."), cert. denied, 469 U.S. 868 (1984).
 
 
 13
 Because the evidence of the value of the property taken from the Forest Service did not exceed one hundred dollars, we must reverse John's felony conviction for theft pursuant to 18 U.S.C. Sec. 641.
 
 IV.
 
 14
 John also argues that the district court gave the jury a coercive Allen instruction following a deadlock in its deliberations. This court reviews challenges to formulation of jury instructions for abuse of discretion. United States v. Abushi, 682 F.2d 1289, 1299 (9th Cir.1982). The test for determining whether an Allen charge was erroneous is generally determined by examining "the instruction 'in its context and under all the circumstances to see if it had an impermissibly coercive effect upon the jury.' " United States v. Beattie, 613 F.2d 762, 764 (9th Cir.) (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965)), cert. denied, 446 U.S. 982 (1980).
 
 
 15
 We also evaluate "coerciveness on the basis of (1) the form of the instruction; (2) the period of deliberation following the Allen charge; (3) the total time of jury deliberations; and (4) the indicia of coerciveness or pressure on the jury." United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988) (internal quotations and citation omitted).
 
 
 16
 In a written order, the district court denied John's motion for judgment for acquittal and a new trial on the ground that the Allen charge given by the court was coercive. The record reflects that the jury began deliberating at 1:45 p.m. on February 15, 1993. The evening recess was at 5:20 p.m. and, at 8:30 a.m. the next day, deliberations resumed. At 12:20 p.m., the bailiff received a note that read, "We believe this jury cannot reach a verdict on any of the five counts. What should we do?" Before all the necessary parties had arrived to address the note, the jury foreman told the bailiff that the jury wished to continue deliberating and that the note should be disregarded. Approximately one hour later, the foreman told the bailiff that the jury "needed to have an answer to their note after all." These two oral communications were not reduced to writing and read into the record, although "[t]he bailiff stated both communications verbatim to counsel on an informal basis. Counsel for both sides were invited to make the oral communications part of the record and declined." At 2:00 p.m. that afternoon, the court reconvened the case and instructed the jury as follows:
 
 
 17
 Before you went out yesterday afternoon, retired to deliberate at about 1:30 in the afternoon, whatever the time was, the precise time is not important, I gave you this instruction. Each of you must decide the case for yourself, but you should only do so after you've considered all the evidence, discussed it fully with your--with the other jurors and listened to the views of your fellow jury members. Do not be afraid to change your opinion if the discussion persuades that you should. But do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict, but of course only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.
 
 
 18
 ....
 
 
 19
 [I]n light of this note and an earlier note which was sent and then we discontinued work on that, I give you this additional instruction.
 
 
 20
 You have advised that you have been unable to agree upon a verdict in this case. I suggest a few thoughts to you. As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jury members. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you have been persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors, fellow jury members, or for the mere purpose of returning a verdict. All of you, each of you, are equally honest and conscientious jurors, who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.
 
 
 21
 I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of the instruction, including this one, and ignore others. They are all equally important.
 
 
 22
 And I add to what I have just said a few further words, taken from one of my colleagues who was a very first-rate judge in a case that he had that was similar to this one, though not as long. And this is what he said to the jurors in that case when they concluded that they weren't perhaps able to finish their work, go any further, and achieve a verdict. And I paraphrase this in part.
 
 
 23
 It is physically and mentally tiring to do the work you've done this past week and over the weekend, in effect, and you've already expended a great deal of time and effort already, as has everyone who has worked on this trial. We should all do our best to get this case decided, if it is possible to do that under the instructions I've given to you earlier and that I'm giving you now, including the answer to the question you posed earlier today, and bearing in mind the remarks just made to you. And so I ask you to return to the jury room for a while yet and see if you can in fact, in light of these added instructions [sic]. Again, not saying they're more important than the earlier ones.
 
 
 24
 Remember that you are not partisans, you are judges, judges of the facts. You should make every effort to reach agreement as to what the truth is and what the verdict should be. In doing so, in doing that, you should not be reluctant to change an opinion expressed earlier if a review of the evidence and the instructions and discussion with your fellow jurors fairly convinced you that you should do so.
 
 
 25
 ....
 
 
 26
 [W]e've all worked hard on the case and I'm going to ask you, respectfully, to return to the jury room and work harder for a while longer.
 
 
 27
 ....
 
 
 28
 If it would do any good, I'd even wear my nightie."
 
 
 29
 (emphasis added).
 
 
 30
 The court's instruction was not coercive. We have upheld the emphasized portions of the instruction outlined above in United States v. Nickell, 883 F.2d 824, 827-28 (9th Cir.1989). See also United States v. Seawell, 583 F.2d 416, 417-18 & n. 2 (9th Cir.) (upholding single Allen charge with language similar to that used above in this case), cert. denied, 439 U.S. 991 (1978). The mere fact that the judge added additional language approved in the Nickell case did not render the instruction coercive.
 
 
 31
 The only indicia of coercion that John cites is the comment by the judge that he would wear his "nightie." John speculates that this remark was a "not-so-veiled reference to the possibility of staying all night if they did not conclude." The record does not support this contention. The trial court's comment cannot fairly be interpreted to intimate that the jury would be kept up all night if they did not reach a verdict.
 
 
 32
 The jury deliberated for two and one-half hours after receiving the Allen instruction. We held in United States v. Bohnham, 772 F.2d 1449, 1451 (9th Cir.1985) that jury deliberation of one and one-half hours between the giving of the Allen charge and the jury verdict did not demonstrate coercion. If the jury had immediately returned a verdict after the Allen charge a suspicion of coercion might be raised. Id.
 
 
 33
 The total time of deliberation does not reflect that the jury was coerced into returning its verdict. The trial lasted five days and the jury deliberated for one and one half days. Thus, "the total time of deliberation [was not] so disproportionate to the task before the before the jury so as to suggest that the Allen charged coerced the jury into returning its verdict." United States v. Cuozzo, 962 F.2d 945, 952 (9th Cir.) (footnote omitted), cert. denied, 113 S.Ct. 475 (1992). Moreover, the jury deliberated two and one half hours after the Allen charge and thereafter returned "selective verdicts" of acquittal and guilt as to the five charges, "thereby demonstrating their rational and independent review of the evidence." Id.
 
 
 34
 The only indicia of jury coercion offered by John is an investigator's affidavit that sets forth a juror's post-trial statement. The trial court rejected the investigator's interpretation of the juror's statement as not credible. The court also noted that the "affidavit purported to testify to the thought processes" of the juror, and to the juror's perceptions of the thought processes of other jury members during deliberations. Evidence concerning a jury's deliberations or a juror's reasoning is not admissible to impeach a verdict. Fed.R.Evid. 606(b); United States v. Rohrer, 708 F.2d 429, 434 (9th Cir.1983). The district court properly rejected the affidavit. We conclude that John has failed to demonstrate jury coercion. Accordingly, his conviction for a violation of section 1001 must stand.
 
 
 35
 In determining John's sentence, the district court grouped the violations of section 1001 and 641 together as a single count pursuant to the provisions of U.S.S.G. Sec. 3D1.2(c). The conviction for a violation of section 1001 resulted in a two-level adjustment of John's offense level under U.S.S.G. Sec. 3C1.1. As a result, a base offense level of four was established pursuant to U.S.S.G. Sec. 2B1.1(a). Because we reverse the theft conviction, the sentence must be vacated with directions that a new sentencing hearing be conducted.
 
 
 36
 The judgment of conviction for a violation of section 641 is REVERSED. The judgment of conviction for a violation of section 1001 is AFFIRMED. The sentence for a violation of section 1001 is VACATED and REMANDED. The motion for release pending appeal is denied as MOOT. Because John has served a considerable portion of the sentence imposed by the district court, and in the interests of justice, the mandate shall issue forthwith.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3