Filed 3/30/17 (prior 2/28/17opn. vacated)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E065899 |
| v. | (Super.Ct.No. RIF1209520) |
| ANGELA KAY VANDIVER, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Becky Dugan, Judge. Affirmed.

Michael A. Hestrin, District Attorney, Emily R. Hanks and Donald W. Ostertag, Deputy District Attorneys, for Plaintiff and Appellant.

Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Respondent.

In this appeal, the parties ask us to determine the value of a blank check for the purpose of distinguishing between misdemeanor and felony receiving stolen property after passage of the Safe Neighborhoods and Schools Act (Proposition 47).

1

Respondent, Angela Kay Vandiver, pled guilty in 2012 to a single felony count of receiving stolen property based on her possession of blank checks she knew had been stolen. She later petitioned to have the conviction redesignated a misdemeanor under the new provisions of Proposition 47 on the ground the checks were worth $950 or less. (Pen. Code, § 1170.18.) The People opposed, arguing the balance of the victim's checking account was greater than $950. The trial court found the value of the blank checks to be de minimis and granted the petition.

The People contend the court erred by (i) reaching the merits because Vandiver did not attach evidence of value to her petition and (ii) determining the checks' value was de minimis. They contend the court should have dismissed the petition as unsupported or found the checks were worth the full amount in the linked checking account and denied the petition on the merits. We affirm.

## I

## FACTUAL BACKGROUND

On November 7, 2012, police found Vandiver in possession of 10 blank checks belonging to another person (the victim).[1] They arrested her and charged her with receiving stolen property and violating probation.

The same day, the investigating officer contacted the victim, who reported "she and her family had recently closed a Citibank account because of Fraud. She [said] they

---

[1] We grant the People's motion to augment the record with the police report and an affidavit submitted by the victim, both part of the record below.

2

had complained to the bank after not receiving the checks they ordered. When they went to the bank to follow-up, the family learned that somebody had drawn nearly $3000 dollars from the account. [She] said [neither] she, nor her family gave anybody permission to take or use the checks. [She] felt it was most likely the checks were taken from their mailbox."

Vandiver talked to police after waiving her *Miranda* rights.[2] She told the police she had recently been kicked out of an apartment and when she left she took items from the person she was staying with, including the checks. "She said she knew it was wrong to have the checks and she should have known better. She said she knew she had stolen property but denied any knowledge of how [her former roommate] came to possess them. She said she had not used any of the checks before." A copy of one of the checks attached to the police report shows it was blank and not endorsed.

The Riverside County District Attorney accused Vandiver of felony receiving stolen property (§ 496, subd. (a);[3] count 1) and having suffered a prison prior (§ 667.5, subd. (b)).[4] The complaint alleged "on or about November 7, 2012, in the County of Riverside, State of California, she did wilfully and unlawfully receive certain property, to wit, CHECKS, which said property had been obtained by theft, knowing said property

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

[3] Unlabeled statutory citations refer to the Penal Code.

[4] The complaint included additional charges not relevant to the appeal.

3

had been so obtained, and did conceal and withhold and aid in concealing and withholding said property from the owner." The complaint does not allege she made the checks out for any amount, attempted to cash them, or attempted to pass them as payment for goods or services.

On November 21, 2012, Vandiver pled guilty to felony receiving stolen property and admitted the prison prior. At the plea hearing, the trial court asked, "Is it true that on November 7, 2012 of this year, in the county of Riverside, you had somebody else's checks?" She replied, "Yes, sir." The court found a factual basis for the plea and accepted it.

The trial court sentenced Vandiver to a midterm of two years in county jail (§ 1170, subd. (h)) on count 1 and an additional year (consecutive) for the enhancement. The court suspended execution of the final 18 months of the sentence and ordered 18 months of supervised release.

On November 4, 2014, the voters of California passed Proposition 47, reducing some felony theft-related offenses—including receiving stolen property—to misdemeanors when the value of the stolen property does not exceed $950. The initiative also created a procedure allowing offenders to petition to designate eligible felony convictions misdemeanors and obtain resentencing if they "would have been guilty of a misdemeanor under" the provisions added by Proposition 47. (§ 1170.18, subds. (a), (f).)

On August 3, 2015, Vandiver filed a petition asking the trial court to designate her receiving stolen property conviction a misdemeanor under section 1170.18. The petition

4

declares "defendant believes the value of the check or property does not exceed $950."

The prosecution responded Vandiver was not entitled to relief because the stolen checks came from an account whose balance was greater than $950. The prosecution requested a hearing limited to the value of the checks.

On February 26, 2016, the trial court held a hearing. The prosecution contended "the value of the checks should be what is in the account" and submitted an affidavit from the victim saying the account contained $3000 at the time the checks were stolen. The trial court consulted its own records, which included the police report. The report said the checks were blank, the victim had closed the associated account before Vandiver's arrest, and Vandiver said she had not used any of the victim's checks. In addition, the police report attached a copy of one of the victim's checks showing it was blank and unendorsed. The trial court noted drug addicts sell stolen blank checks for any amount they can get. The prosecutor conceded the checks were not written out and there was no evidence Vandiver had used any checks to take money from the account, but insisted the checks "are worth whatever is in the account."

The trial court found the checks were worth a de minimis amount and granted the petition. It deemed count 1 a misdemeanor, and ordered the prison prior stricken.

On April 22, 2016, the People filed a notice of appeal.

## II

## DISCUSSION

A.    *Petitioner's Burden*

The People contend the trial court erred in granting the petition because Vandiver's "section 1170.18 petition failed to present any evidence regarding the underlying facts of her section 496 conviction."  In effect, the People contend the trial court abused its discretion by reaching the merits of the petition without first finding she had made out a prima facie case of entitlement to resentencing.

We have concluded elsewhere section 1170.18 cannot be read to limit the trial court's discretion as the People propose.  (*People v. Abarca* (2016) 2 Cal.App.5th 475, 479, review granted Oct. 19, 2016, S237106.)  The People present neither contrary authority nor any other reason to conclude the trial court was *required* to summarily deny the petition because Vandiver failed to attach evidence.  The trial court acted within its statutory discretion to consider evidence contained in court records and to set an evidentiary hearing to establish the facts underlying the conviction.  (*People v. Huerta* (2016) 3 Cal.App.5th 539, 543 (*Huerta*); § 1170.18, subd. (b) ["Upon receiving a petition . . . the court shall determine whether the petitioner satisfies the [eligibility] criteria"].)

Recently, the Supreme Court issued an opinion approving the trial court's approach.  In *People v. Romanowski* (Mar. 27, 2017, S231405) ___ Cal.5th ___ [2017 Cal. LEXIS 2326] (*Romanowski*), the Supreme Court held the theft of access card account information (§ 484e, subd. (d)) is an offense eligible for redesignation and

6

resentencing under section 1170.18.  The trial court had denied the petition on the ground the offense was ineligible.  The court of appeal reversed and remanded for a hearing on value, and the Supreme Court affirmed.  In discussing the appropriate procedure on remand, the Supreme Court confirmed "[t]he ultimate burden of proving section 1170.18 eligibility lies with the petitioner," but noted, "[i]n some cases, the uncontested information in the petition and record of conviction may be enough for the petitioner to establish this eligibility.  When eligibility is established in this fashion, 'the petitioner's felony sentence shall be recalled and the petitioner sentenced to a misdemeanor. . . .'" (*Romanowski,* [at p. 25].)  Under this procedure, it would have been error for the trial court to dismiss the petition after holding a hearing and reviewing evidence that appeared to establish petitioner's eligibility.  Under these circumstances, we cannot find the trial court abused its discretion by reaching the merits of Vandiver's petition.

B.      *The Value of Blank Checks*

The People contend the trial court erred in valuing the blank checks.  They argue the court should have determined the stolen checks exceeded $950 in value on the ground the account linked to the checks contained $3,000.  Again, we find no error.

Before the electorate passed Proposition 47, a violation of section 496, subdivision (a) could be charged as a felony or a misdemeanor, at the discretion of the prosecutor.  However, Proposition 47 amended the provision to require any violation be treated as a misdemeanor "if the value of the property does not exceed nine hundred fifty dollars ($950)."  (§ 496, subd. (a).)  We review the trial court's interpretation of this provision de

7

novo and its findings of fact for substantial evidence. (*People v. Rizo* (2000) 22 Cal.4th 681, 685; *People v. Perkins* (2016) 244 Cal.App.4th 129, 136.)

"The means of valuing stolen property is settled under the theft statutes." (*People v. Swanson* (1983) 142 Cal.App.3d 104, 107.) Section 484, subdivision (a), which defines the crime of theft, directs "the reasonable and fair market value shall be the test" for determining whether a theft offense is a misdemeanor or a felony. (*People v. Pena* (1977) 68 Cal.App.3d 100, 103-104.) "[T]he 'fair market price' is the highest price obtainable from a willing buyer by a willing seller, neither of whom is forced to act. It is not the highest price in the market but the highest price a willing buyer and a willing seller will arrive at." (*Id.* at p. 104.) The Supreme Court has confirmed the fair market value test governs the determination of value of stolen access card information under section 484e, subdivision (d). (*Romanowski*, *supra*, ___ Cal.5th [at pp. 20-21].) After we invited them to address the issue in supplemental briefing, the parties agreed the fair market value test applies to determine the value of stolen property under the receiving stolen property statutes as it does under the theft statutes, and we are aware of no contrary authority. (See *People v. Swanson* 142 Cal.App.3d 104, 108 [holding fair market value test applies to section 12022.6 enhancement for high-value theft just as it does to distinguish grand from petty theft].)

The People contend the trial court erred by failing to conclude, under the fair market value test, the checks Vandiver had in her possession had "the value of the linked bank account to which the check provides access." Relying on an affidavit signed by the

8

victim, they represent "the account attached to the blank checks here was active, and if accessed, held over $3,000." They conclude the value of the checks exceeded $950, rendering Vandiver's conviction ineligible under section 1170.18. We find the People's argument unpersuasive on both the law and the facts.

First, the People offer neither authority nor analysis to support their contention the victim would have been able to obtain $3,000 from a willing buyer for a blank, unendorsed check from her account. We doubt a convincing case can be made for the position. Only an account holder can use a check to legally access the funds in the linked account. The People have provided no basis for thinking *any* buyer—never mind a *willing* one—would pay the full balance of an account in return for a check the buyer could not legally use to access its funds. A check cashing business pays only a portion of the face value for a check that is properly made out and endorsed, keeping the remainder as its fee. (See *People v. Smith* (2016) 1 Cal.App.5th 266, 273, review granted Sept. 14, 2016, S236112 ["A person in possession of a check made out in his or her name can endorse the check to the check cashing business and receive the proceeds in cash, less a commission paid to the check cashing business"]; see also Civ. Code, §§ 1789.30-1789.35 [regulating how check cashing businesses collect fees for their services].)

The People's position improperly pegs the value of a blank check at its potential value *to the account holder*, which is the wrong measure as a matter of law. "The value to be placed upon stolen articles for the purpose of establishing a felony charge is the fair market value of the property and *not the value of the property to any particular*

9

*individual*." (*People v. Lizarraga* (1954) 122 Cal.App.2d 436, 438, italics added.) Taken to its logical conclusion, the People's position entails the absurd result each of the checks in Vandiver's possession was worth $3,000 to her and the ten checks were worth $30,000 altogether. We therefore reject the People's position the reasonable fair market value of a stolen blank, unendorsed check is the full value of the linked account.

Second, even if we were to accept the People's position the fair market value of a blank check equals the amount in the linked account, we would conclude the trial court did not err. The investigating officer reported he contacted the victim the same day he found Vandiver with the checks. She told him "her family had recently closed [the] Citibank account" because they never received their checks and "[w]hen they went to the bank to follow-up, the family learned that somebody had drawn nearly $3000 dollars from the account." Thus, the police report establishes the victim had closed her bank account *before* Vandiver was arrested in possession of the checks. Moreover, as the People conceded in the trial court, there is no evidence Vandiver was the person who used checks to take money from the account. At the time of the offense, then, the $3,000 had been removed from the linked account and the account had been closed. The victim's affidavit is not to the contrary. In it, she says she "had over $3000 in the account *at the time the checks were stolen*," not at the time Vandiver was found to possess checks previously stolen. Thus even accepting the People's theory of valuation, the trial court's value finding was based on substantial evidence.

Vandiver's contention blank checks are worth a de minimis amount finds support in the case law. The Third Appellate District has considered whether a defendant was entitled to have his felony conviction for possessing a blank check with intent to defraud (§ 475, subd. (b)) designated a misdemeanor under the forgery punishment provision as it was amended by Proposition 47 (§ 473, subd. (b)). (*People v. Gonzales* (2016) 6 Cal.App.5th 1067, review granted Feb. 15, 2017, S240044, cited for persuasive value (Cal. Rules of Court, rule 8.1115).) Our sister court concluded the blank checks did "not have any face value, and thus . . . come within the ambit of section 473(b)," which requires check forgery offenses be punished as misdemeanors if the value of the check does not exceed $950. (*People v. Gonzales*, at. p. 1072.) Other authorities suggest checks without value as negotiable interests have a value greater than zero. (E.g., *People v. Cuellar* (2008) 165 Cal.App.4th 833, 839 [holding a check known to be forged "had slight intrinsic value by virtue of the paper it was printed on" and "as a negotiable instrument that, if legally drawn, would entitle its holder to payment on demand"].) These authorities lend support to the trial court's determination the checks Vandiver had in her possession did not exceed $950 in value.

After we invited supplemental briefing on the fair market value of stolen blank checks, the People argued we should "look to the black market value of such a stolen blank check." The People direct us to authorities permitting such evidence in other jurisdictions. (See, e.g., *United States v. Luckey* (9th Cir. 1981) 655 F.2d 203, 205 [approving use of expert testimony of blank checks' "worth on the 'thieves' market,'" but

reversing federal felony conviction due to lack of evidence a blank check exceeded felony threshold amount].) Since the parties briefed these issues, the Supreme Court endorsed this approach to evaluating the reasonable fair market value of access card information.[5] (*Romanowski*, *supra*, ___ Cal.5th [at p. 24].) The Supreme Court held "[w]hen a defendant steals property that is not sold legally, evidence related to the possibility of illegal sales can help establish 'reasonable and fair market value.' Only in cases where stolen property would command no value on any market (legal or illegal) can courts presume that the value of stolen access information is de minimis." (*Ibid*.)

We see no principled reason to treat stolen checks differently than access card information just by virtue of their being blank and unendorsed. It may be, as a factual matter, there is no black market for stolen blank checks or that any such market is so unstable there is no meaningfully reliable way "to identify how much stolen [blank checks] would sell for." (*Romanowski*, *supra*, ___ Cal.5th [at p. 23].) However, this is not the case to explore those issues. The People had the opportunity to object in the trial court to granting the petition on the basis the checks had a black market value, but chose not to do so. The trial court pointed out at the hearing that drug addicts tend to sell stolen blank checks for whatever they can get for them. The People declined the court's invitation to object on that basis, but instead insisted blank checks "are worth whatever is

---

[5] Originally, we rejected evidence of black market value as relevant to the determination of the reasonable fair market value of stolen blank checks. After the Supreme Court issued *Romanowski*, we vacated our original opinion to make it consistent with that decision.

in the account." We hold the People forfeited reliance on the black market value of blank checks by passing on the opportunity to address that basis for denying Vandiver's petition in the trial court. (*City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1327.)

## III

## DISPOSITION

We affirm the order.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

HOLLENHORST
Acting P. J.

MILLER
J.

13