Filed 3/27/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S231405 |
| v. | ) | |
| | ) | Ct.App. 2/8 B263164 |
| DANIEL ROMANOWSKI, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. MA064403 |
| _____ | ) | |

When California voters approved Proposition 47, they enacted statutory provisions with the purpose of reducing punishment for a broad range of crimes previously classified as felonies. What this case requires us to decide is whether theft of access card account information — an offense that includes theft of credit and debit card information — is one of the crimes eligible for reduced punishment. We hold that it is. Although theft of access card information differs in some ways from other forms of theft, Proposition 47 broadly reduced punishment for "obtaining any property by theft" where the value of the stolen information is less than $950. (Penal Code, § 490.2, subd. (a).)[1] And while Proposition 47 does not specify a particular valuation test for this $950 threshold, the Penal Code section that defines theft says that "the reasonable and fair market value shall be the test" for determining the value of stolen property. (§ 484, subd. (a).) What we hold in

---

[1] All undesignated code references are to the Penal Code.

light of this provision and Proposition 47 is that section 490.2's value threshold must be applied using this "reasonable and fair market value" test. Moreover, courts may consider evidence related to the possibility of illicit sales when determining the market value of stolen access card information. We therefore affirm the judgment of the Court of Appeal.

## I.

On September 29, 2014, Daniel Romanowski pleaded no contest to a felony violation of section 484e, subdivision (d). The trial court sentenced Romanowski to four years in county jail. About a month later, the voters approved Proposition 47, the Safe Neighborhoods and Schools Act, which reduced the punishment for several crimes that were previously punished as felonies. These reductions were directed both at future offenders and those "currently serving a sentence for a conviction." (§ 1170.18, subd. (a).) For the latter group, anyone who "would have been guilty of a misdemeanor . . . had [Proposition 47] been in effect at the time of the offense" is allowed to "petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with" Proposition 47's reductions. (*Ibid.*)

Romanowski filed a resentencing petition on March 10, 2015. The Superior Court denied the petition, ruling that Proposition 47 does not apply to theft of access card information. The Court of Appeal reversed this ruling. The court explained that "by its plain terms, section 490.2, subdivision (a) reduces a violation of section 484e, subdivision (d) to a misdemeanor if it involves property valued at less than $950." The court thus remanded the case for a determination of "whether the value of the property involved in appellant's conviction pursuant to section 484(e), subdivision (d) did not exceed $950." The court did not specify how this determination should be made, though the opinion mentioned the example of a defendant "selling stolen access card information in a black market"

2

in an earlier discussion of "the inquiry into the value . . . of the access card information." We granted review to determine whether section 490.2 applies to theft of access card account information.

## II.

The core question raised by this case depends on the interplay of two separate statutory schemes — one enacted by the Legislature, and one by the public. The first statutory scheme is the one Romanowski was convicted of violating: Penal Code section 484e, subdivision (d). This subdivision says: "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." (§ 484e, subd. (d).)

The other statutory scheme at issue here reflects Penal Code provisions enacted by voters through Proposition 47, which downgraded several crimes from felonies to misdemeanors. One of Proposition 47's purposes was to reduce the number of prisoners serving sentences for nonviolent crimes, both to save money and to shift prison spending toward more serious offenses. (See *Harris v. Superior Court* (2016) 1 Cal.5th 984, 992 ["One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of the initiative."].) The provision of Proposition 47 reducing punishment for theft crimes provides: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor." (§ 490.2, subd. (a).) Section 487 lists four types of grand theft. First, subdivision (a) makes it grand theft to steal any "money, labor, or real or

3

personal property . . . of a value exceeding nine hundred fifty dollars ($950)." Next, subdivision (b) sets a $250 threshold for theft of "domestic fowls, avocados, olives, citrus or deciduous fruits, other fruits, vegetables, nuts, artichokes, or other farm crops" as well as of "fish, shellfish, mollusks, crustaceans, kelp, algae, or other aquacultural products . . . from a commercial or research operation which is producing that product." After that, subdivision (c) makes it grand theft to steal property "from the person of another," and subdivision (d) makes it grand theft to steal either an "automobile" or a "firearm." In sum, section 487 makes it grand theft to steal: more than $950 worth of anything; more than $250 worth of the crops or critters listed in subdivision (b); anything at all from the victim's person; or any cars or guns.

What section 490.2 indicates is that after the passage of Proposition 47, "obtaining any property by theft" constitutes petty theft if the stolen property is worth less than $950.[2] Of course, section 487, subdivision (a), already made it grand theft to steal property worth over $950. But various other theft provisions carved out separate categories of grand theft based on the type of property stolen, with either a lower value threshold or no value threshold at all. These are the provisions that Proposition 47 modified by inserting a $950 threshold. Or as the Legislative Analyst put it: "This measure would limit when theft of property of $950 or less can be charged as grand theft. Specifically, such crimes would no longer be charged as grand theft *solely because of the property involved*." (Voter

---

[2] Proposition 63 was approved by the electorate in November 2016. It added a new subsection to section 490.2 that reads: "This section shall not apply to theft of a firearm." (§ 490.2, subd. (c).) The text of section 490.2 enacted by Proposition 47 contained no distinction relative to different forms of theft, and this newly added subsection does not encompass Romanowski's conviction for theft of access card account information.

4

Prior to the changes wrought by Proposition 47, section 487 set out of three categories of theft that were charged as grand theft solely because of the property involved — theft of guns, theft of cars, and theft of property from the victim's person. (See § 487, subds (c)—(d).) But these three categories were not the only forms of the theft that prosecutors could charge as grand theft regardless of value. And we know that the voters who approved Proposition 47 had their sights on definitions of grand theft other than the categories in section 487, since section 490.2 refers to "[s]ection 487 *or any other provision of law defining grand theft*." (§ 490.2, subd. (a), italics added.) For these other forms of grand theft too, Proposition 47 establishes that "obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft." (§ 490.2, subd. (a).)

One of those "other provision[s] of law defining grand theft" for which Proposition 47 reduced punishment is section 484e, subdivision (d). (§ 490.2, subd. (a).) This subdivision indicates that anyone committing theft of access card information "is guilty of grand theft." (§ 484e, subd. (d).) Section 484e also resides in chapter 5 of the Penal Code, which is titled "Larceny." In just about every way available, the Legislature made clear that theft of access card information is a theft crime. Nothing in the text of the initiative suggested that the voters were implicitly leaving this form of theft out when they used the phrases "any other provision of law defining grand theft" and "obtaining any property by theft." (§ 490.2, subd. (a).) We deny a phrase like "any other provision of law" its proper impact if we expect a penal statute — whether enacted by the Legislature or the electorate — to further enumerate every provision of the Penal Code to which it is relevant. And we generally presume that the electorate is aware of

5

existing laws.  (*In re Lance W.* (1985) 37 Cal.3d 873, 890 & fn. 10.)  Here this means we must presume that voters were at least aware that the Penal Code sets out "grand theft" crimes that included theft of access card account information.  (§ 484e.)  The text and structure of Proposition 47 convey that section 490.2's clear purpose was to reduce punishment for crimes of "obtaining any property by theft" that were previously punished as "grand theft" when the stolen property was worth less than $950.  And section 484e confirms that theft of access card information is one of those crimes.

Though our primary task is to understand section 490.2's purpose by analyzing the statute's language and structure, we can glean further insight from other provisions of Proposition 47, and — to the extent the relevant statutory provision is ambiguous — from appropriate extrinsic sources.  Proposition 47's preamble reads:  "The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment."  (Voter Information Guide, *supra*, text of Prop. 47, § 2, p. 70.)  The preamble further specifies that "the purpose and intent of the people of the State of California" was to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession."  (*Id.*, § 3.)  We see no reason to assume that reasonable voters seeking to anticipate the consequences of enacting Proposition 47 would have concluded that theft of access card information worth less than $950 is a serious or violent crime exempt from Proposition 47's reach.  (See *Lance W.*, 37 Cal.3d at p. 890 & fn. 10 [looking to "the ballot summary and arguments" as well as "the preamble to the initiative" to discern an initiative's intended purpose].)  Certainly nothing in the text of the enacted statute conveys that its terms or

6

purpose support this assumption.  To the contrary:  Proposition 47 directed that the text of the initiative "shall be broadly construed to accomplish its purposes" and "shall be liberally construed to effectuate its purposes."  (Voter Information Guide, *supra*, text of Prop. 47, §§ 15, 18, p. 74.)  And downgrading the punishment for theft of access cards information worth less than $950 no doubt serves Proposition 47's purpose of "[r]equir[ing] misdemeanors instead of felonies for nonserious, nonviolent crimes."  (*Id.*, § 3.)

The Legislative Analyst's report on Proposition 47 fits with this interpretation too.  (See *People v. Morales* (2016) 63 Cal.4th 399, 406–407 [looking to the "Legislative Analyst's analysis of Proposition 47" for evidence of "the voters' likely understanding of Proposition 47's meaning"].)  This analysis told voters that Proposition 47 would reduce punishment for any theft of property worth less than $950 that could previously be charged as grand theft based on the type of property.  In a summary of "current law," the Legislative Analyst explained that "theft of property worth $950 or less" could be "charged as grand theft" "if the crime involves the theft of certain property (such as cars)."  (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.)  Next, in an explanation of the initiative's effect, the Legislative Analyst explained that this category of theft crimes (any "theft of property worth $950 or less" that could previously be "charged as grand theft" simply because "the crime involves the theft of certain property") was the category of theft crimes that Proposition 47 would reduce punishment for.  Specifically, voters were told that the "measure would limit when theft of property of $950 or less can be changed as grand theft" in that "such crimes would no longer be charged as grand theft *solely because of the type of property* involved."  (*Ibid.*, italics added.)  Nowhere in this analysis did the Legislative Analyst suggest that only theft of select types of property would be

7

reduced, nor did the analysis lay out any basis for distinguishing among different types of property for this purpose.

Accordingly, in light of section 490.2's language and its statutory context — which includes both the other statutory provisions that Proposition 47 enacted and previously existing features of the Penal Code — we conclude that the statute's unqualified references to "obtaining any property by theft" and "any . . . provision of law defining grand theft" encompass theft of access card information. (§ 490.2, subd. (a).) The People urge us to conclude otherwise. They offer three arguments for why the terms "obtaining any property by theft" and "any . . . provision of law defining grand theft" do not encompass theft of access card information. Each argument infers a limit to the scope of Proposition 47's provisions. None has any basis in the statutes at issue.

The first limit that the People propose has to do with the difficulty of applying section 490.2's $950 threshold to theft of access card information. The People claim that applying this threshold to theft of access card information "would likely often prove exceedingly difficult," and this difficulty "is strong evidence that the offense is not, and was not intended to be, reducible." We rejected a similar invitation to infer such a limitation on a statute's purpose in *People v. Farell* (2002) 28 Cal.4th 381. *Farell* dealt with section 1203.044's unique probation conditions for " 'theft of an amount exceeding fifty thousand dollars ($50,000).' " (*Id.* at p. 385.) We held that these conditions applied to convictions for theft of trade secrets worth more than $50,000. Like the People here, Farell had argued "that difficult questions of valuation would face a court that applied section 1203.044 to the theft of trade secrets or other nonmonetary property, and . . . for this reason it is unlikely that the Legislature intended to include nonmonetary property — specifically intellectual property — within the reach of this statute." (*Id.* at p. 391.) We rejected this argument, explaining that

8

we did "not believe that the Legislature would consider problems of valuation determinative" since "[s]imilar questions of valuation are presented by any charge of grand theft pursuant to section 487." (*Ibid*.)

We reject the People's argument here for the same reason. There is no reason to conclude that section 490.2 categorically excludes theft of access card information because of the somewhat greater challenge involved in estimating the dollar amount associated with this crime. Access card theft was not the only offense that was punished without regard to the value of the stolen property until Proposition 47 went into effect. Section 487 (which both the *Farell* opinion and the statute enacted by Proposition 47 refer to expressly) made it "grand theft" to steal automobiles, as well to steal "from the person of another." (§ 487, subds. (c)—(d).) These forms of theft previously required no evidence of the value of the stolen property. Now they do. The category of property that can be taken from someone's person is rather expansive, as it includes anything a person could carry. The potential difficulty of putting a price on this property is equally expansive. And while the value of intangible property may sometimes be more elusive than the value of tangible property, we see no reason why this will always be true. We certainly see nothing in the text of Proposition 47 that either sets out a distinction between tangible and intangible property or otherwise limits the measure's reach based on impressions about whether the value of the stolen property will, in the People's words, "likely often prove exceedingly difficult" to measure. We decline to read these limitations into the statute.[3]

---

[3] The People's argument here is not that access card information falls outside section 490.2's reference to "property." Nor could they make this argument. (See *People v. Kozlowski* (2002) 96 Cal.App.4th 853, 865 [holding that PIN numbers meet the Penal Code's definition of "property" since that definition "includes personal property such as money, goods, chattels, things in action and evidences

*(footnote continued on next page)*

9

Second, the People argue that "[a]lthough section 484e(d) is punished as grand theft, it does not primarily define a 'theft' crime." The People even claim that it is "misleading to refer to the crime, as the Court of Appeal did, as 'theft of access information.'" We disagree. As an initial matter, the People repeatedly used the terms "access card theft" and "theft of access card account information" in their petition for review asking us to consider this case, underscoring how this terminology is hardly uncommon. Which is hardly surprising, because the Legislature chose to place section 484e in a chapter of the Penal Code titled "Theft." (See *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 489 ["The policy sought to be implemented [by a statute] should be respected [citation], and to this end, titles of acts, headnotes, and chapter and section headings may properly be considered in determining legislative intent."].) Even if this heading does not by itself resolve the meaning of access card information theft, it establishes that the Penal Code at least *refers to* the crime as theft. The People offer no compelling reason why the term "theft" in Proposition 47 should not apply to a crime that bears that name in the Penal Code.

Moreover, the People seem to ignore part of the language of section 484e, subdivision (d), when they argue that this subdivision "does not primarily define a 'theft' crime." The People write in their opening brief that section 484e, subdivision (d), does not "define a 'theft' crime" because the statute "is violated when someone *acquires or retains possession* of access card account information

_____

*(footnote continued from previous page)*

of debt"]; see also *Farell*, 28 Cal.4th at p. 381 [holding that the term "theft of an amount exceeding fifty thousand dollars" covers the theft of trade secrets worth over $50,000].) Access card information is a form of intangible property, just like PIN numbers and trade secrets.

10

issued to another person (and with the intent to use it fraudulently)." The People's reply brief reiterates that the statute "proscribes the acquisition or retention of access card information with the intent to use it fraudulently, which is different from a proscription against 'obtaining any property by theft.' " Both these glosses on the statute omit a crucial element. Theft of access card information requires "acquir[ing] or retain[ing] possession of access card account information with respect to an access card validly issued to another person, *without the cardholder's or issuer's consent*." (§ 484e, subd. (d), italics added.) This "without . . . consent" requirement confirms that theft of access card information is a "theft" crime in the way the Penal Code defines "theft."

Even when a defendant is voluntarily entrusted someone else's access card information, any attempt to "retain[] possession" of the information "without the cardholder's or issuer's consent" and "with the intent to use it fraudulently" (§ 484e, subd. (d)) would be a form of embezzlement, which is covered by Penal Code section 484's definition of "theft." (See §§ 503 ["Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted."], 484 ["Every person . . . who shall fraudulently appropriate property which has been entrusted to him or her . . . is guilty of theft."]; see also *People v. Davis* (1998) 19 Cal.4th 301, 304 ["the formerly distinct offenses of larceny, embezzlement, and obtaining theft by false pretenses were consolidated in 1927 into the single crime of 'theft' defined by Penal Code section 484"].) California's definition of "theft" also includes theft by false pretenses, which "unlike larceny has no requirement of asportation." (*People v. Williams* (2013) 57 Cal.4th 776, 787; see also § 484 ["Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft."].) So even if we assume that section 490.2 only reduces punishment for crimes that require the

11

definition set out in section 484, theft of access card information falls within that definition.

The third limit the People ask us to place on Proposition 47's scope has to do with the access card theft statute's underlying purpose. The People claim "there is no reason to think that the voters who enacted Proposition 47 intended to undercut [section 484e's] broad consumer protection." We accept for the sake of argument that "[t]he purpose of the legislation adding subdivision (d) to Penal Code section 484e was to protect innocent consumers." (*People v. Molina* (2004) 120 Cal.App.4th 507, 516.) But the next step in the People's argument — that punishment for theft crimes that protect innocent consumers cannot be reduced along with the punishment for other theft crimes — frames section 484e, subdivision (d)'s purpose far too expansively. Subdivision (d) did not establish that theft of access card information must always be punished more harshly than other forms of theft. To the contrary, the Legislature made the punishment scheme for theft of access card information identical to the schemes for crimes like automobile theft. Then, two decades later, the voters reduced the punishment for those crimes when the value of the stolen property is below $950. Though we agree that section 484e was enacted to protect consumers, nothing in the text of the statute suggests that the Legislature meant for consumers to be protected in such a manner that changes like Proposition 47 implicitly cannot apply. Nor, as we discuss in the next paragraph, is there any indication that voters implicitly sought to restrict Proposition 47's scope based on unstated expectations about consumer protection. And even if such a limit were evident, it is far from obvious that a reduction in punishment for theft of access card information worth less than $950 — with no reduction for higher value thefts — will materially reduce the extent of consumer protection.

12

The People's argument about "the statute's broad consumer protection" also overlooks the fact that Proposition 47 expressly reduced the punishment for another set of crimes that serve to protect consumers. Proposition 47 reduces punishment for "forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950)." (§ 473, subd. (b).) Section 473 also protects consumers from fraud and identity theft. In fact, a check can contain some of the same information that is found on an access card, along with the owner's address and other details that would facilitate identity theft. Given that Proposition 47 specifically created a $950 threshold for check forgery, we see no reason to infer (against section 490.2's plain meaning) that voters implicitly intended to exempt theft of access information simply because this criminal prohibition serves to protect consumers. Where the electorate excluded whole categories of crimes based on the underlying purpose of the crimes, these limits were explicit. (See, e.g., Voter Information Guide, Prop. 47, § 3, p. 69 ["people convicted of murder, rape, and child molestation will not benefit from this act"].) Nothing in Proposition 47 suggests that voters implicitly intended for the initiative's scope to hinge on inferences about the objectives of the crimes at issue. The electorate weighed the costs and benefits of Proposition 47. On the question of whether consumer protection offenses are exempt from the initiative's provisions, the language approved by the public conveys an unambiguous, negative answer.

But because we hold that section 490.2 reduces the punishment for theft of access card information valued at less than $950, we must answer a second question: how do courts determine whether the value of stolen access card information exceeds $950? After all, section 484e, subdivision (d) punishes the theft of an access card or access card information itself, not of whatever property a

13

defendant may have obtained using a stolen access card or stolen information. Fraudulent *use* of access cards or account information is punished as a separate crime. (See § 484g.) This means a defendant can be convicted of violating section 484e, subdivision (d), even if he or she never uses the stolen account information to obtain any money or other property. So the $950 threshold for theft of access card information must reflect a reasonable approximation of the stolen information's value, rather than the value of what (if anything) a defendant obtained using that information.

How to value stolen access card account information is elucidated in part by the Penal Code's definition of "theft," which requires courts to determine the value of property obtained by theft based on "reasonable and fair market value." (§ 484, subd. (a) ["In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test."].) Though section 484, subdivision (a), says "for the purposes of this section," section 484 is a definitional section. It sets the ground rules for how theft crimes are adjudicated — for example, how various terms are defined, how value must be calculated, and how certain evidentiary presumptions operate. Specific theft crimes are set out in a variety of other sections, and courts have long required section 484's "reasonable and fair market value" test to be used for theft crimes that contained a value threshold, such as violations of section 487, subdivision (a). (See, e.g., *People v. Tijerina* (1969) 1 Cal.3d 41, 45; *Farell*, 28 Cal.4th at p. 392.) Acceptance of this approach was part of the backdrop against which Proposition 47 was enacted, and Proposition 47 does not refer to any other approach to valuation. We thus see no basis for an alternative approach to valuation either in the original statutory scheme or in the provisions enacted by Proposition 47. Courts must use section 484's "reasonable and fair market value" test when applying section 490.2's value threshold for theft crimes.

Both parties stress that "the reasonable and fair market value" of stolen access card information will not always be clear, since stolen access card information is not available for sale in legal markets. And both sides claim that this difficulty is a reason to take an all-or-nothing approach here. As discussed above, the People argue that this "difficulty is strong evidence that the offense . . . was not intended to be . . . reducible." We have already explained why that view is wrong. Over on the other side, Romanowski argues that this difficulty is reason to measure the value of stolen access card information based on the intrinsic value of whatever tangible property was stolen (for example, the value of the plastic for a stolen credit card) and "simply hold that the value of a stolen access card is de minimis as a matter of law." This approach has no basis in the statutory language "reasonable and fair market value." (§ 484, subd. (a).) The plastic value of a stolen credit card is hardly the value that the market would place on stolen credit card information. Also, while access card information is sometimes printed on a physical object, that will not always be true. In cases where a defendant stole something other than a physical object, a measure based on the plastic value of a credit card would not reflect "the value of the property obtained." (*Id.*)

We thus hold that the Penal Code's reference to the "reasonable and fair market value" requires courts to identify how much stolen access card information would sell for. (§ 484, subd. (a); see also *Tijerina*, 1 Cal.3d at p. 45 ["in the absence of proof . . . that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise"]; *People v. Pena* (1977) 68 Cal.App.3d 100, 103 ["When you have a willing buyer and a willing seller, neither of whom is forced to act, the price they agree upon is the highest price obtainable for the article in the open market. Put another way, 'fair market value' means the highest price obtainable in the market

15

place . . . ."]; CALCRIM No. 1801 ["Fair market value is the price a reasonable buyer and seller would agree on if the buyer wanted to buy the property and the seller wanted to sell it, but neither was under an urgent need to buy or sell."].) The fact that stolen access card information is not sold legally does not relieve courts of this duty. This court has never suggested that the term "reasonable and fair market value" must refer to legal market value even in cases where there is no legal market for the stolen property. When a defendant steals property that is not sold legally, evidence related to the possibility of illegal sales can help establish "reasonable and fair market value." Only in cases where stolen property would command no value on any market (legal or illegal) can courts presume that the value of stolen access information is de minimis.

Romanowski argues that a " 'black market' approach to valuation" will prove "unworkable and unseemly." But other jurisdictions have long used this approach to measure the value of stolen credit cards (see, e.g., *Miller v. People* (Colo. 1977) 566 P.2d 1059, 1060), stolen money orders (see, e.g., *U.S. v. Tyers* (2d Cir. 1973) 487 F.2d 828, 831; *Churder v. U.S.* (8th Cir. 1968) 387 F.2d 825, 833; *U.S. v. Bullock* (5th Cir. 1971) 451 F.2d 884, 890; *U.S. v. Ciongoli* (3d Cir. 1966) 358 F.2d 439, 441), and stolen checks (see, e.g., *U.S. v. Luckey* (9th Cir. 1981) 655 F.2d 203, 205). Several more jurisdictions have long looked to illegal market value for other types of stolen property. (See, e.g., *People v. Colasanti* (N.Y. 1974) 322 N.E.2d 269, 270; *U.S. v. Hynes* (6th Cir. 2006) 467 F.3d 951, 966 ["the three circuits that have considered the question of whether market value can be determined from the prices paid in a thieves' market have all answered that question in the affirmative"]; *U.S. v. Oberhardt* (7th Cir. 1989) 887 F.2d 790, 792 ["It is now well settled that the valuation of stolen goods according to the concept of a 'thieves' market' is an appropriate method for determining the 'market value' of goods . . ."].) Indeed we are aware of no jurisdiction that bars courts from

16

looking at evidence of illegal market value.  We see no reason to establish that restriction in California.

Because the value of the stolen access card information was not an element at the time Romanowski was convicted, this case raises a further question:  Who bears the burden of proving newly relevant facts in the context of a section 1170.18 petition to recall a sentence?  The ultimate burden of proving section 1170.18 eligibility lies with the petitioner.  (See Evid. Code, § 500.)  In some cases, the uncontested information in the petition and record of conviction may be enough for the petitioner to establish this eligibility.  When eligibility is established in this fashion, "the petitioner's felony sentence shall be recalled and the petitioner sentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.18, subd. (b).)  But in other cases, eligibility for resentencing may turn on facts that are not established by either the uncontested petition or the record of conviction.  In these cases, an evidentiary hearing may be "required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact."  (Cal. Rules of Court, rule 4.551(f); see also *People v. Sherow* (2015) 239 Cal.App.4th 875, 880 ["A proper petition could certainly contain at least [the petitioner's] testimony about the nature of the items taken.  If he made the initial showing the court can take such action as appropriate to grant the petition or permit further factual determination."].)

17

## III.

Proposition 47 reduces the punishment for theft of access card information in violation of Penal Code section 484e, subdivision (d).  Not only does section 490.2 use the broad terms "grand theft" and "obtaining any property by theft" rather than distinguishing between different forms of theft, the statute's structure and other indicia of its purpose suggest that its provisions encompass the offense at issue here.  After Proposition 47, theft of access card information "where the value of the . . . property taken does not exceed nine hundred fifty dollars ($950)" can be a misdemeanor.  (§ 490.2, subd. (a).)  As with any other theft that is punished based on the stolen property's value, "the reasonable and fair market value shall be the test" for applying section 490.2's $950 threshold.  (§ 484, subd. (a).)  When stolen access card information lacks a legal market, moreover, courts may consider evidence concerning the potential for illicit sale of the access card information in order to determine its value.  The judgment of the Court of Appeal is affirmed.

CUÉLLAR, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
KRUGER, J.

18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Romanowski

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 242 Cal.App.4th 151
**Rehearing Granted**

_____

**Opinion No.** S231405
**Date Filed:** March 27, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Christopher Estes

_____

**Counsel:**

Richard L. Fitzer, under appointment by the Supreme Court, for Defendant and Appellant.

Laura Beth Arnold for California Public Defender's Association and Law Offices of the Public Defender for the County of Riverside as Amici Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Michael R. Johnsen and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

Jackie Lacey, District Attorney (Los Angeles), Steven Katz, Head Deputy District Attorney, Phyllis C. Asayama and John Harlan II, Deputy District Attorneys, for Los Angeles County District Attorney as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard L. Fitzer
6285 East Spring Street, 276N
Long Beach, CA  90808
(562) 429-4000

Laura Beth Arnold
4200 Orange Street
Riverside, CA  92501
(951) 304-5651

Mary Sanchez
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2364