Filed 11/1/18; Opinion following transfer from Supreme Court

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAUL ANTHONY CARETTO, | B265256 |
| Petitioner, | (Los Angeles County |
| v. | Super. Ct. No. BA384603) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. William N. Sterling, Judge. Petition granted.

Ronald L. Brown, Public Defender of Los Angeles County, Albert J. Menaster, Olivia Sula-Wang, and Mark Harvis, Deputy Public Defenders for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, and Mary Sanchez, Deputy Attorney General for Real Party in Interest.

Petitioner Paul Anthony Caretto challenges by petition for writ of mandate the trial court's denial of his petition for resentencing pursuant to Penal Code section 1170.18, a provision added by Proposition 47.[1] We previously denied his petition, holding that his felony conviction for receiving stolen property under section 496 was not subject to reduction to a misdemeanor because the fair market value of the two stolen debit cards in his possession was more than $950 as measured by the amounts in the victim's bank accounts linked to the cards, the only evidence of value in the record.

The California Supreme Court granted review and transferred the matter to us with directions to vacate our decision and reconsider the issue in light of *People v. Romanowski* (2017) 2 Cal.5th 903 (*Romanowski*). *Romanowski* confirmed that the " 'reasonable and fair market value' " test from section 484 is the proper measure of the $950 value threshold for theft crimes. (*Romanowski,* at p. 914.) As applied to stolen access card information, the court held the fair market value is measured by "how much [the] stolen access card information would sell for" (*id.* at p. 915), which can include "evidence concerning the potential for illicit sale of the access card information" (*id.* at p. 917).

After *Romanowski*, our prior ruling remains correct. *Romanowski* set the proper valuation test as fair market value and held that evidence of illicit sales could be considered, but the

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

court did not *limit* the type of evidence that might be relevant to show fair market value.  In our view, the balances in linked accounts could certainly be relevant evidence of the fair market value.  But because *Romanowski* was decided after the trial court proceedings in this case, we grant Caretto's writ petition and remand for the trial court to give him the opportunity to present evidence of the fair market value of the stolen cards consistent with *Romanowski.*

## BACKGROUND

We take the facts from our prior opinion:[2]  Caretto was initially charged with attempted robbery under section 211, acquisition of access card account information under section 484e, subdivision (d), and receiving stolen property under section 496— a driver's license and two debit cards.  He was also charged with possession of methamphetamine under Health and Safety Code section 11377.

On May 10, 2011, Caretto was detained by the police in connection with an attempted robbery investigation.  When he was searched, the police found methamphetamine.  The police also found two stolen debit cards and a stolen driver's license, all in the name of the same victim.  The police questioned Caretto, and he denied ever using the debit cards.  At the end of the preliminary hearing, the magistrate dismissed the robbery and acquisition of access card account information charges based upon insufficiency of evidence.

On August 22, 2011, Caretto pled no contest to the remaining charges and admitted three one-year prison prior allegations pursuant to section 667.5, subdivision (b), that were

---

[2]     (*Caretto v. Superior Court of Los Angeles County* (May 19, 2016, B265256) [nonpub. opn.].)

3

added in the amended information. Caretto was sentenced to four years in prison and execution of the sentence was suspended. He was granted four years of probation but never saw his probation officer and was later caught with burglary tools.

On May 7, 2015, Caretto appeared for a probation violation hearing. The trial court appointed a public defender and suggested that a motion to reduce the charges under Proposition 47 might be appropriate. The next day Caretto filed a one-page motion asking that the two charges for which he was convicted be reduced to misdemeanors under Proposition 47. While he alleged the value of the stolen property was less than $950, he did not identify the stolen property or attach a declaration or other evidence showing the value of the stolen property did not exceed $950.

During the May 21, 2015 hearing, the People opposed the motion, arguing the value of the stolen debit cards was the amount of funds available in the linked bank accounts. Caretto's counsel disagreed and argued the value was the intrinsic value of the plastic cards themselves. The court asked for further briefing on the issue of how to determine the value of bank debit cards. The court suggested the prosecutor attempt to contact the victim to ascertain whether the bank debit cards were "valid." The court stated that, although it was the defense's burden to prove that the value of the debit cards was less than $950, it wanted the parties to "cooperate." There was no discussion on resentencing of Caretto's conviction for possession of methamphetamine under Health and Safety Code section 11377, subdivision (a).

On June 4, 2015, the court indicated it made no sense that the value would be limited to the plastic making up the card, and that Caretto had the burden to show the value was under $950.

4

The court stated its belief that the value of each debit card should be based on the amount of money in the "appropriate account." The court also indicated that if the parties uncovered facts showing the cards were inactive, then the court would reduce the charge to a misdemeanor and resentence accordingly. The court stated that if the evidence showed there was an ability to use the cards to withdraw over $950, then the motion would be denied. The court again continued the hearing to allow the parties to locate the victim.

On June 17, 2015, the parties appeared once more. The People provided the court with an email from the detective who had originally investigated the case and now had located the victim. The victim told the detective that the amount he had available for withdrawal on the two debit cards was between $1,500 and $1,800 (from Bank of America and Chase Bank). Caretto's counsel argued that the value of the cards was "not necessarily the value of the plastic itself, but actually any loss that would determine the value as opposed to a potential and hypothetical amount that could have been taken." The court responded, "[T]he court is finding that loss would only be relevant as a determining factor as to restitution. But in terms of Prop 47, the value of the card to me—I mean if someone has a card worth $2,700 and it's stolen and someone receives it, then the value for receiving stolen property is the value of the card at the time . . . ." The court once again continued the hearing to determine if the parties could obtain any documentation from the victim supporting the detective's email. But the court said, "If [the prosecutor] establishes the value is over $950, the amount that could be drawn over, you'll have to have the Court of Appeal tell me I'm wrong."

On June 22, 2015, the trial court denied Caretto's resentencing motion. He admitted violating probation and it was revoked. The court then scheduled a sentencing hearing. Once again, there was no discussion on Caretto's request for resentencing of the drug possession conviction.

Caretto filed a initial petition for writ of mandate challenging the trial court's valuation for his receiving stolen property conviction, as well as the court's failure to reduce his felony conviction for possession of methamphetamine to a misdemeanor. On the valuation issue, he argued that the proper method of valuing the stolen cards was the "minimal intrinsic value" of the cards themselves.

We issued an alternative writ of mandate as to the trial court's denial of Caretto's motion for resentencing of his drug possession conviction. In response, the trial court vacated its ruling as to the drug possession conviction and granted the petition. We then dismissed the petition as moot and Caretto sought review as to the trial court's denial of resentencing of his section 496 conviction. Our Supreme Court granted review and transferred the matter to us with directions to vacate our order and issue an order directing respondent court to show cause why the relief sought in the petition should not be granted.

We issued the order to show cause, the People filed a return, and petitioner filed a reply. The People argued Caretto bore the burden of proving eligibility under Proposition 47 and the trial court properly found the fair market value of the stolen debit cards exceeded $950 based on the balances in the accounts.

In our prior opinion, we denied Caretto's writ. We characterized the issue as "whether, based on the evidence before it, the trial court properly valued the victim's two debit cards

6

found in [Caretto's] possession for the purpose of determining whether [Caretto] demonstrated he was qualified for resentencing." (*Caretto v. Superior Court of Los Angeles County*, *supra*, B265256, at p. 6.) We agreed with the People that the stolen property should be valued based on the fair market value, and the only evidence of fair market value in the record was the victim's statement that the combined accounts had over $950 in them. We held that Caretto bore the burden to show entitlement to resentencing, and he failed to carry that burden on the record before us.

Caretto filed a petition for review in the California Supreme Court, which the court granted. It transferred the matter to us with directions to vacate our decision and reconsider the issue in light of *Romanowski*.

## DISCUSSION

### I.   Proposition 47 and *Romanowski*

Proposition 47 amended various provisions of the Penal and Health and Safety Codes to reduce personal possession drug offenses and thefts involving less than $950 from a straight felony or a "wobbler," to a straight misdemeanor.

Proposition 47 created a new resentencing provision, section 1170.18, subdivision (a), which provides: "A person who, on November 5, 2014, was serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('the act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5a, 473,

7

476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act." (§ 1170.18, subd. (a).)

Section 496 was amended by Proposition 47, and provides in relevant part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year . . . ." (§ 496, subd. (a).)

In *Romanowski*, the petitioner had pleaded no contest to felony theft of access card information in violation of section 484e, subdivision (d) and sought reduction of his sentence pursuant to section 1170.18. (*Romanowski, supra,* 2 Cal.5th at p. 906.) The trial court denied his petition, holding that Proposition 47 did not apply to theft of access card information. A panel of this Division reversed, holding that theft in violation of section 484e, subdivision (d) was subject to Proposition 47 by way of section 490.2, which " 'reduces a violation of 484e, subdivision (d) to a misdemeanor if it involves property valued at less than $950.' " (*Romanowski, supra,* at p. 906.) We remanded for the trial court to determine whether the property involved in the petitioner's conviction did not exceed $950, but did not set forth how value should be determined. (*Ibid.*)

On review, the Supreme Court affirmed. It first held that

8

the theft of access card information as defined in section 484e, subdivision (d) was subject to resentencing pursuant to Proposition 47.  The crime fell within section 490.2, which "reduce[d] punishment for crimes of 'obtaining any property by theft' that were previously punished as 'grand theft' when the stolen property was worth less than $950."  (*Romanowski, supra,* 2 Cal.5th at p. 909.)[3]

Having held the petitioner's felony sentence was eligible for resentencing, the court addressed the question of how to value the access card information.  It first noted that section 484g separately punishes the fraudulent *use* of stolen access card information, whereas section 484e, subdivision (d) "punishes the theft of an access card or access card information itself, not of whatever property a defendant may have obtained using a stolen access card or stolen information."  (*Romanowski, supra,* 2 Cal.5th at p. 914.)  As a result, "the $950 threshold for theft of access card information must reflect a reasonable approximation of the stolen information's value, rather than the value of what (if anything) a defendant obtained using that information."  (*Ibid.*)

The court concluded that the proper measure is the "fair

---

[3]     Section 490.2 states in relevant part, "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor," subject to certain exceptions.  Section 484e, subdivision (d) states, "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

9

and reasonable market value" test for theft crimes set forth in section 484, subdivision (a). (§ 484, subd. (a) ["In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test."]; see *Romanowski, supra,* 2 Cal.5th at p. 914.) "Acceptance of this approach was part of the backdrop against which Proposition 47 was enacted, and Proposition 47 does not refer to any other approach to valuation. We thus see no basis for an alternative approach to valuation either in the original statutory scheme or in the provisions enacted by Proposition 47. Courts must use section 484's 'reasonable and fair market value' test when applying section 490.2's value threshold for theft crimes." (*Romanowski, supra,* at p. 914.)

The court refused to adopt either party's "all-or-nothing approach" to valuation, rejecting both the People's view that the difficulty in valuing access card information meant the crime should not be reducible at all, as well as the petitioner's view that the value of an access card is de minimis based upon the plastic it is printed on. (*Romanowski, supra,* 2 Cal.5th at p. 915.) Instead, the court wrote: "We thus hold that the Penal Code's reference to the 'reasonable and fair market value' requires courts to identify how much stolen access card information would sell for." (*Ibid.*)

As part of this inquiry, the court did not preclude a valuation based on illegal sales: "The fact that stolen access card information is not sold legally does not relieve the courts of this duty. This court has never suggested that the term 'reasonable and fair market value' must refer to legal market value even in cases where there is no legal market for the stolen property. When a defendant steals property that is not sold legally, evidence related to the possibility of illegal sales can help

10

establish 'reasonable and fair market value.' Only in cases where stolen property would command no value on any market (legal or illegal) can courts presume that the value of stolen access information is de minimis." (*Romanowski, supra,* 2 Cal.5th at p. 915.)

Finally, the court addressed the burden of proof, holding that the "ultimate burden of proving section 1170.18 eligibility lies with the petitioner." (*Romanowski, supra,* 2 Cal.5th at p. 916.) The court explained: "In some cases, the uncontested information in the petition and record of conviction may be enough for the petitioner to establish this eligibility. When eligibility is established in this fashion, 'the petitioner's felony sentence shall be recalled and the petitioner sentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).) But in other cases, eligibility for resentencing may turn on facts that are not established by either the uncontested petition or the record of conviction. In these cases, an evidentiary hearing may be 'required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact.' " (*Romanowski, supra,* at p. 916.)

## II.    Valuation of the Stolen Debit Cards

Caretto's offense was receiving stolen property in violation of section 496, not theft of access card information in violation of

11

section 484e, subdivision (c).  But the valuation issue is the same and the reasoning in *Romanowski* applies with equal force. Caretto contended in the trial court that a debit card has only the minimal, intrinsic value of its plastic.  As noted above, *Romanowski* rejected that approach in favor of applying the fair market value test.  (*Romanowski, supra,* 2 Cal.5th at p. 915 [finding this "approach has no basis in the statutory language 'reasonable and fair market value' " in § 484, subd. (a)].)  Caretto now contends the "reasonable and fair market value" cannot be based on the amount of money in the linked accounts because, in his view, "that is *not* how much the stolen cards would sell for." Instead, he argues that because *Romanowski* did not preclude the use of black market value, he is entitled to remand for an opportunity to present evidence of "black market worth."

While *Romanowski* approved the use of illegal sales or an illegal market to determine the value of stolen access card information, it did not purport to limit evidence to that category. The basic question is simply fair market value, which has been defined as the highest price obtainable in the marketplace.  (See *Romanowski, supra,* 2 Cal.5th at p. 915, citing *People v. Tijerina* (1969) 1 Cal.3d 41, 45 ["In the absence of proof . . . that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise"], *People v. Pena* (1977) 68 Cal.App.3d 100, 104 ["When you have a willing buyer and a willing seller, neither of whom is forced to act, the price they agree upon is the highest price obtainable for the article in the open market.  Put another way, 'fair market value' means the highest price obtainable in the market place"], and CALCRIM No. 1801 ["Fair market value is

12

the price a reasonable buyer and seller would agree on if the buyer wanted to buy the property and the seller wanted to sell it, but neither was under an urgent need to buy or sell."].)

Here, we have no doubt evidence of the balances in linked accounts could be relevant to fixing the highest price in the marketplace for stolen access cards. Indeed, the value of stolen access cards may very well turn on the amount of money accessible with the card—it stands to reason that the higher the balance in the account, the more valuable the card giving access to that balance. So a court (or perhaps an expert witness) would likely need to know the amount of money available to an illicit buyer in order to place the highest value on access cards in an illegal market.

We take a moment here to clarify our language in *People v. Liu* (2018) 21 Cal.App.5th 143 (*Liu*), review granted June 13, 2018, S248130, an opinion we recently issued dealing with similar valuation issues under Proposition 47 and *Romanowski*. In *Liu*, the petitioner sought resentencing on five counts involving the theft of access card information in violation of section 484e, subdivision (d). For each count, there was evidence of either the amount of fraudulent charges on the stolen cards or how much restitution was ordered, or both. For three counts, both the fraudulent charges and the restitution exceeded $950; and for two counts, the purchases and restitution fell below $950. (*Liu, supra,* at p. 147.)

We concluded the petitioner was ineligible for resentencing on three counts but eligible for resentencing on two counts, based on the amounts fraudulently charged on the stolen cards. (*Liu,*

*supra,* 21 Cal.App.5th at pp. 149–150.) In reaching our decision, we explained that *Romanowski* held that section 484e, subdivision (d) was subject to Proposition 47 resentencing, the petitioner bore the burden to show eligibility, and "courts may use the ' "reasonable and fair market value" ' test, and may look to evidence of illegal sales to determine how much stolen access card information is worth." (*Liu, supra,* 21 Cal.App.5th at pp. 148–149.)

After noting that the defendant "contends the only method of valuation of stolen access card information is the fair market value on the black market, and that remand is necessary because the record here contains no evidence of fair market value," we said that "*Romanowski* does not establish that the only method for valuing access card information is the fair market value test." (*Liu, supra,* 21 Cal.App.5th at p. 149.) In our view, "[w]here, as here, the access card information was actually used to procure goods or services, common sense tells us that the unauthorized charges are proof of at least the minimum value of the access card information." (*Ibid.*)

We continued: "Defendant relies heavily on the statement in *Romanowski* that: '[A] defendant can be convicted of violating section 484e, subdivision (d) even if he or she never uses the stolen account information to obtain any money or other property. So the $950 threshold for theft of access card information must reflect a reasonable approximation of the stolen information's value, rather than the value of what (if anything) a defendant obtained using that information.' (*Romanowski, supra,* 2 Cal.5th at p. 914.) She also relies on the court's reasoning that the reference to 'reasonable and fair market value' in section 484 (defining theft and providing guidance on the

14

determination of the value of stolen property) 'requires courts to identify how much stolen access card information would sell for.' (*Romanowski,* at p. 915, see § 484, subd. (a).) Defendant argues this means that, in the case of a defendant who *did* use the stolen account information, the value of property the defendant obtained is irrelevant. Defendant's argument makes no sense. Surely, stolen access card information would sell for at least the value of the property obtained by a defendant who used the information, and in many cases, it would sell for much more." (*Liu, supra,* 21 Cal.App.5th at p. 149.)

Under our decision today, the outcome in *Liu* was correct, as was our reasoning. Fraudulent charges could be highly probative of the value of the stolen cards themselves. Where we spoke imprecisely was suggesting or implying that a valuation based on fraudulent charges is an alternative to the fair market value test set out in *Romanowski* or that the fair market value test is optional. It is not. The fair market value test from *Romanowski* is the controlling test for valuing stolen access card information for Proposition 47 purposes. (*Romanowski, supra,* 2 Cal.5th at p. 914 ["Courts *must* use section 484's 'reasonable and fair market value' test when applying section 490.2's value threshold for theft crimes." (Italics added.)]; *id.* at p. 915 ["We thus hold that the Penal Code's reference to the 'reasonable and fair market value' *requires* courts to identify how much stolen access card information would sell for." (Italics added.)].)

Although *Romanowski* did say that "the $950 threshold for theft of access card information must reflect a reasonable approximation of the stolen information's value, rather than *the*

15

*value of what (if anything) a defendant obtained using that information*," it did so because fraudulent use of access card information is a separate crime from acquisition and possession of access card information. (*Romanowski, supra,* 2 Cal.5th at p. 914, italics added.) We do not interpret this statement to preclude the use of evidence of fraudulent charges to fix the value of the stolen card itself, so long as that evidence is introduced with the goal of determining the card's fair market value.

In short, consistent with *Romanowski* and *Liu,* a host of evidence could be relevant to the fair market value of stolen access cards, from actual fraudulent charges and the balances in linked accounts to expert testimony on the illegal market for stolen cards. We merely reiterate that the proper analysis under *Romanowski* is the fair market value test, whatever evidentiary components might go into that determination in any given case.

This evidence-based approach is consistent with the approach of at least one other court in valuing property for Proposition 47 purposes. (See *People v. Lowery* (2017) 8 Cal.App.5th 533 (*Lowery*), review granted April 19, 2017, S240615.) Decided just before *Romanowski, Lowery* involved the cashing of a forged check written for over $1,000, above the $950 value limit for misdemeanor forgery in section 473, subdivision (b), which was set by Proposition 47. (*Lowery,* at p. 535.) Similar to *Romanowski*, the court rejected the parties' all-or-nothing approach to value: it rejected the People's view that the check was valued in the amount written on it; and it rejected the petitioner's view that the check was valued at the intrinsic value of the paper. (*Lowery,* at p. 539.) Instead, the court held that the value of a forged check is its "actual monetary worth," typically "measured by its fair market value." (*Ibid.*) The court explained

16

that a check's face value could be evidence of its value, especially if it was cashed.  But other evidence might show a value less than the face value, such as if the check was poorly forged and unlikely to be cashed, or evidence from an expert witness of "a discounted price paid on the street."  (*Id.* at p. 541.)

In Caretto's case, the only evidence of value presented to the trial court was the victim's statement that he had a combined total of $1,500 to $1,800 in the two bank accounts linked to the stolen debit cards. The trial court was entitled to credit the victim's statement to infer that the stolen debit cards would have been valued in the marketplace at or near the balances in the linked accounts, that is, the highest price someone would have been willing to pay for cards to access those funds.  (See Evid. Code, § 813, subd. (a)(2) [owner of personal property is qualified to opine about its value]; *People v. Henderson* (1965) 238 Cal.App.2d 566, 566–567 [owner of stolen watch could testify as to the worth of stolen watch for purposes of determining whether defendant was guilty of grand theft]; *People v. Haney* (1932) 126 Cal.App. 473, 475–476.)  But because *Romanowski* was decided after the trial court proceedings and provided critical guidance on how to value the stolen debit cards at issue here, we think Caretto should be given an opportunity to present evidence consistent with *Romanowski* in order to rebut the People's showing.  Thus, we will remand for further proceedings.

## DISPOSITION

The petition is granted and the matter remanded for further proceedings consistent with this opinion.  Having served its purpose, our order to show cause is discharged.

**CERTIFIED FOR PUBLICATION**

                                        BIGELOW, P. J.

We concur:


            RUBIN, J.


            GRIMES, J.